COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, O'Brien and AtLee
Argued at Lexington, Virginia


ROCHELLE LEE EATON

OPINION BY
v.     Record No. 1271-15-3          JUDGE MARY GRACE O'BRIEN
MAY 10, 2016

WASHINGTON COUNTY
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(Jordan C. Pennington, on brief), for appellant. Appellant
submitting on brief.

James R. Hodges; L. Dudley Senter, III, Guardian *ad litem* for the
infant child (McElroy & Hodges; The Senter Law Firm, PC, on
brief), for appellee.


Rochelle Lee Eaton ("appellant") appeals the termination of her residual parental rights to

her daughter ("C.O."), born February 18, 2002. Appellant asserts four assignments of error:

I.  That the trial court committed reversible error by terminating the
residual parental rights of the Appellant when clear and
convincing evidence was not presented to prove that she was
responsible for the conditions which led to the child being placed
in foster care.

II. That the trial court committed reversible error by terminating the
residual parental rights of the Appellant when clear and
convincing evidence was not presented to prove that . . . she had
failed to maintain continuing contact with and to provide or
substantially plan for the future of the child for a period of six (6)
months after the child's placement in foster care, notwithstanding
the reasonable and appropriate efforts of social, medical, mental
health, or other rehabilitative agencies to communicate with the
parent and to strengthen the parent's relationship.

III. That the trial court committed reversible error by terminating the
residual parental rights of the Appellant when clear and

convincing evidence was not presented to prove that she had, without good cause, been unwilling or unable within a reasonable period of time, not to exceed twelve (12) months from the date the child was placed in foster care, to substantially remedy the conditions which led to or required continuation of the child's placement in foster care, notwithstanding the reasonable and appropriate efforts of social, medical, mental health, or rehabilitative agencies to such end.

IV. That the trial court committed reversible error by terminating the residual parental rights of the Appellant when clear and convincing evidence was not presented to prove that it was in the best interest of the said minor child to terminate the Appellant's residual parental rights.[1]

## I. Background

In 2005, appellant and her three-year-old daughter, C.O., were living in Bristol, Tennessee. In August of 2005, the juvenile court of Sullivan County in Bristol, Tennessee, ("the Tennessee court") removed C.O. from her mother's custody after finding that C.O. was "dependent and neglected" and her health and safety were subject to an immediate threat. The Tennessee court placed C.O. in the custody of the Tennessee Department of Children's Services ("TDCS"). Except for a brief period of time in 2009, C.O. never again resided with her mother.

TDCS provided services to appellant during the pendency of the Tennessee case. The Tennessee court held a series of hearings from 2005 until 2010, and found at each hearing that C.O.

---

[1] We note that this argument was not included as an assignment of error, and there was no reference to where the error was preserved in the trial court. Both of these omissions violated Rule 5A:20(c). In addition, Eaton failed to present principles of law and legal authority supporting her argument that the trial court could not find that termination was in the best interests of the child in the absence of expert testimony. This is a clear violation of Rule 5A:20(e) and our long-standing case law addressing that Rule. See Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 865 (2008) ("Unsupported assertions of error 'do not merit appellate consideration.'" (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008))). At the risk of stating the obvious, the Rules of the Supreme Court are rules and not suggestions; we expect litigants before this Court to abide by them. And, when they fail to do so and we deem the failure significant, we may treat the issue as waived. Id. at 850, 667 S.E.2d at 866. Although we conclude that Eaton failed to comply with Rule 5A:20, in light of the unique facts of this case, we decline to deem the issue waived and will address it.

remained at risk of ongoing and future substantial harm if returned to her mother's custody. In October of 2010, the Tennessee court granted permanent custody of C.O. to Joe and Minnie Hobbs, the child's great-uncle and great-aunt, who lived in Washington County, Virginia. In the order granting permanent custody, the court made the following findings:

1.  That there is clear and convincing evidence of ongoing and future substantial harm to [C.O.] while in the custody of [appellant].

2.  That due to the clear and convincing evidence of ongoing future substantial harm to [C.O.], permanent custody is awarded to [Joe and Minnie Hobbs].

3.  That it has not been safe to return [C.O.] to [appellant] since the initiation of the dependency and neglect action originally filed in October 2005, and that there is no evidence that [appellant]'s home will ever be safe for [C.O.] to return.

4.  That [appellant] is unable to care for the day-to-day medical, educational, physical, and emotional needs of [C.O.].

C.O. remained with the Hobbs family until 2013, when they were no longer able to care for her.[2] On October 7, 2013, the Washington County, Virginia Department of Social Services ("WCDSS") filed for emergency removal of C.O. in the Washington County Juvenile and Domestic Relations District Court ("J&DR court"). The J&DR court granted the motion, and WCDSS took custody of C.O. and placed her in foster care. After objecting to the finding that C.O. was abused or neglected, Mr. and Mrs. Hobbs filed for relief of custody, which was granted. C.O. remained in foster care with a family approved by WCDSS.

In July of 2014, WCDSS filed for a permanency planning hearing that called for termination of appellant's residual parental rights and identified a permanent goal of adoption. Appellant subsequently filed a petition for custody in J&DR court. Following a hearing on March 6, 2015, the

---

[2] There was evidence that Mr. and Mrs. Hobbs were elderly and that Mrs. Hobbs suffered from dementia.

J&DR court terminated appellant's residual parental rights, accepted the permanency plan filed by WCDSS, and dismissed appellant's petition for custody.[3]

Appellant appealed the J&DR court's ruling, and a trial took place in circuit court on June 9, 2015. At trial, Jessica Newland, a foster care worker at WCDSS, testified that she became involved in the case in October 2013, when WCDSS assumed custody of C.O. Newland testified that WCDSS provided appellant with some services, including arranging visitation and providing gas vouchers for transportation to visitation and team treatment meetings. Appellant visited with C.O. once a month, but the visits only took place if WCDSS initiated them. Newland observed the visitations and testified that appellant's mother would accompany appellant and the women argued frequently during the visitations. According to Newland, appellant also spent a fair amount of the visitation time playing games on her cellular phone.

Newland testified that she visited appellant's one-bedroom apartment, where appellant was sleeping on a mattress on the floor. Appellant had not been employed since 2013. When questioned by the court, Newland stated that WCDSS did not recommend that C.O. be returned to her mother because TDCS had previously determined that they had exhausted all of the services that they could provide to appellant in her home and appellant did not cooperate with a home study of her residence in Tennessee coordinated by WCDSS.

C.O.'s foster father testified that the child had lived with his family since October 2013. He told the court that C.O. was a good student, and she was involved in extracurricular and church activities. The foster father stated that he and his wife would like to adopt C.O.

C.O. testified that she loved both her mother and her foster family. When asked if she wanted to spend weekends with her mother, she answered "[t]o be honest, no." She said that she did want visitation with her mother but she did not "feel comfortable spending the night," and did

---

[3] The father's parental rights were terminated without objection.

- 4 -

not want to live with her mother. C.O. told the court that she wanted to be adopted by "the right family," and she felt that her foster family was "the right family."

Appellant testified that she wanted custody of C.O. She indicated that she resided in a one-bedroom apartment. If she obtained custody of C.O., appellant planned to sleep on the couch and give C.O. the bedroom. Appellant stated that she takes medication for depression and bipolar disorder. She acknowledged that she does not work or have a driver's license. Appellant told the court that she receives $706 a month from social security disability due to her mental illness, and if she was granted custody of C.O. she would "be looking into" getting C.O. insurance and food stamps.

Over objection, the court also considered the reports and documentation prepared by TDCS during the years that the case was being heard in the Tennessee court. The reports described the involvement of TDCS with appellant and C.O., including psychological assessments of appellant and services offered to her. Finally, the court also received the orders entered by the Tennessee court which granted permanent custody of C.O. to Mr. and Mrs. Hobbs in 2010, after finding that it was not safe to return C.O. to appellant's home. In a letter opinion, the court found that WCDSS met its burden to terminate appellant's parental rights under both Code § 16.1-283(B) and (C). The court also approved the foster care plan with the goal of adoption and dismissed appellant's motion for custody.

## II. ANALYSIS

### A. Standard of Review

When reviewing termination of residual parental rights, this Court presumes that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387

- 5 -

S.E.2d 794, 796 (1990)).  The circuit court has "broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Farley, 9 Va. App. at 328, 387 S.E.2d at 795.  Therefore, in a case involving termination of parental rights, "[t]he trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"  Fields, 46 Va. App. at 7, 614 S.E.2d at 659 (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

1.  Sufficiency of the Evidence for Termination Pursuant to Code § 16.1-283(B)

Appellant contends that the trial court erred in terminating her residual parental rights under Code § 16.1-283(B).  She argues that WCDSS failed to demonstrate by clear and convincing evidence that she was the person responsible for the conditions that led to C.O. being placed in foster care and the evidence was insufficient to warrant termination of her residual parental rights under Code § 16.1-283(B).

Code § 16.1-283(B) states in pertinent part:

> The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.[4]

---

[4] WCDSS initially placed the child in foster care in October 2013.

When WCDSS became involved in the case, C.O. was in the custody of Joe and Minnie Hobbs, as a result of the Tennessee court's order. Appellant argues that when C.O. was removed from the Hobbs family and placed in foster care, it was because Mr. and Mrs. Hobbs were unable to care for C.O. According to appellant, she was not personally responsible for any serious or substantial threat to C.O. because her abuse or neglect preceded the placement with the Hobbses. Appellant asserts that "the facts leading to [C.O.'s] removal have nothing whatever to do with [her] ability to parent" C.O. We disagree.

Appellant ignores the fact that C.O. was in the custody of Mr. and Mrs. Hobbs due to an order from the Tennessee court that specifically found appellant was unable to provide for the "day-to-day medical, educational, physical, and emotional needs" of C.O. and that there was "no evidence" that appellant's home would ever be a safe place for C.O. to return. C.O. was initially placed in foster care in 2005 because her mother could not take care of her. At the time of the termination hearing in the Washington County circuit court in 2015, that condition had not changed.

After examining the entire history of the case, including the involvement of TDCS, the trial court found that WCDSS proved by clear and convincing evidence that termination of appellant's residual parental rights was warranted under Code § 16.1-283(B). The court held that

> the neglect or abuse suffered by [C.O.] presents a serious and
> substantial threat to her life, health or development; and it is not
> reasonably likely that the conditions which resulted in such neglect
> or abuse can be substantially corrected or eliminated so as to allow
> the child's safe return to her parent within a reasonable period of
> time.

As early as 2005, when C.O. was three years old, the Tennessee court found that she was "dependent and neglected" and "subject[] to an immediate threat to [her] health and safety" due to appellant's actions. The Tennessee court based its findings in part on appellant's failure to obtain medical care for C.O., the evidence that her home was unsanitary and unsafe for C.O., and the fact that appellant had no source of income. C.O. remained in TDCS custody until she was placed with

Mr. and Mrs. Hobbs in 2008. The Tennessee court found that despite the efforts of TDCS, there was "no basis" on which to return custody of C.O. to appellant.

After considering the nature and breadth of the extensive services provided to appellant by TDCS, the trial court found that WCDSS was not required "to again provide [appellant] with services that have already been provided in Tennessee, and clearly were not successful." WCDSS did, however, provide appellant with some services, including transportation to and from visitation with C.O.

However, appellant contends that the court erred by reviewing the TDCS reports and the orders entered by the Tennessee court when the court terminated her residual parental rights under Code § 16.1-283(B). Appellant argues that the trial court should ignore the unrebutted evidence admitted at trial of her long history with TDCS while she and C.O. were residing in Tennessee. She asserts that the events that caused her to lose custody in 2005 and the unsuccessful attempts of various agencies in Tennessee to assist her over a substantial period of time were irrelevant to the proceedings in Virginia.

Contrary to appellant's argument, Code § 16.1-283(B)(2) specifically allows the trial court to consider this precise history of "efforts made to rehabilitate" appellant. The statutory language includes efforts made by *any* agencies. Code § 16.1-283(B). It is not limited to the petitioning agency or even to agencies within Virginia. We decline to read such a limitation into the statutory language.

> When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language. Thus, when the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed.

- 8 -

Lee Cty. v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002) (citations omitted). To rule otherwise would be to consider the petition in a vacuum, with no information concerning prior efforts to reunite an abused or neglected child with her parent.

Further, WCDSS was not required to provide services to appellant in order for the court to terminate her parental rights under Code § 16.1-283(B). The case of Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 616 S.E.2d 765 (2005), addressed the issue of whether a department of social services has a statutory duty to provide a parent with rehabilitative services prior to terminating residual parental rights under Code § 16.1-283(B). In Toms, we affirmed the trial court's finding that it was appropriate to terminate parental rights even when rehabilitative services were not provided by the department of social services. Id. at 275, 616 S.E.2d at 774. "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Id. at 268, 616 S.E.2d at 771. Code § 16.1-283(B) "merely requires the court to 'take *into consideration* the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies *prior* to the child's initial placement in foster care.'" Id. at 269, 616 S.E.2d at 771 (quoting Code § 16.1-283(B)(2)).

In Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 408-10, 719 S.E.2d 329, 345-46 (2012), we noted the distinction between Code § 16.1-283(B), which does not require the department to offer any services before requesting termination of a parent's rights and Code § 16.1-283(C), which does.[5] We held that

---

[5] Code § 16.1-283(C) states:

> The residual parental rights of a parent or parents of a child placed
> in foster care as a result of court commitment . . . may be

there is an important distinction between these two subsections. Subsection (C) cases require provision of rehabilitative services before termination because they do not begin with a prior finding of abuse or neglect; whereas subsection (B) cases start with the abused or neglected finding and require the trial court to make a judgment about a child's best interest based on that finding.

Id. at 409, 719 S.E.2d at 346.

---

terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

1. The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; or

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

In the case before us, the majority of the rehabilitative services were offered to appellant when C.O. first was placed in the custody of TDCS in Tennessee in 2005. However, despite receiving years of on-going services from TDCS, appellant was unable to correct the conditions that left C.O. at risk of abuse or neglect. Contrary to appellant's assertion, the trial court was not limited to considering only those services provided in Virginia. Code § 16.1-283(B)(2) specifically directs the trial court to consider "the efforts made to rehabilitate the parent . . . by *any* public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care." (Emphasis added). The trial court properly considered the efforts made by both TDCS and WCDSS to assist appellant.

Appellant also contends that the court may only consider what occurred in the six-month time period before WCDSS filed the permanency planning petition requesting termination of parental rights and adoption. She relies on the case of Copeland v. Todd, 282 Va. 183, 715 S.E.2d 11 (2011), to support this proposition. Her reliance is inapposite. Todd was an appeal of an adoption ordered pursuant to Code § 63.2-1202(H). Id. at 187-92, 715 S.E.2d at 13-16. In Todd, the natural mother appealed a trial court's order granting an adoption without her consent. Id. The Supreme Court held that the relevant six-month time period during which the natural mother must be found not to have any contact with the child is the six months before the petition was filed. Id. at 193-94, 715 S.E.2d at 16-17.

Todd addressed a completely different type of proceeding than the action brought by WCDSS. The present case involves a foster care review of an abuse and neglect petition and a request for involuntary termination of parental rights under Code § 16.1-283(B). It is not a proceeding for adoption. There is no similarity between the statutory language and requirements of Code § 63.2-1202(H) and Code § 16.1-283(B). In fact, under Code § 16.1-283(B), there is no

- 11 -

requirement for WCDSS to provide any services at all, much less for them to provide services for the six months preceding the filing. See Toms, 46 Va. App. at 269, 616 S.E.2d at 771.

The court was entitled to consider that TDCS assumed custody of C.O. because there was clear and convincing evidence of on-going and substantial harm if C.O. was returned to appellant's custody. The trial court examined the conflicting evidence of the mother's current living situation and resolved that issue against her. The court found that appellant could not, within a reasonable period of time, remedy the conditions that required C.O. to be removed from her care. We find that the court did not err in its determination to terminate appellant's parental rights under Code § 16.1-283(B).[6]

### 2. Best Interests of the Child

Because "the rights of parents may not be lightly severed," Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972), Code § 16.1-283(B) requires proof by clear and convincing evidence that it is in the best interests of the child to terminate parental rights. Appellant argues that because WCDSS did not provide any expert testimony that it would be in C.O.'s best interest to terminate her mother's parental rights, it did not meet its burden.

The trial court, acting as fact finder, retains "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. We are unaware of any case law suggesting that a trial court is required to consider expert testimony in determining the best interests of the child. In fact, "[t]his Court has [recognized] that 'there is no simple, mechanical, "cut and dried" way' to apply the best interests of the child

---

[6] Appellant also assigns error to the trial court's determination that WCDSS proved that termination of appellant's residual parental rights was appropriate under Code § 16.1-283(C). Because we find that the trial court did not err in terminating appellant's rights based on Code § 16.1-283(B), we do not address this assignment of error. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48, 764 S.E.2d 284, 291 (2014)

(quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). Instead, "[t]he question

must be resolved . . . in light of the facts of each case." Toombs v. Lynchburg Div. of Soc. Servs.,

223 Va. 225, 230, 288 S.E.2d 405, 407 (1982).

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 581-82

(2004) (quoting Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986)).

Here, the court not only reviewed appellant's history with social services dating back to the

initial removal in 2005, it also was able to consider the testimony of C.O., who was thirteen years

old at the time of trial. C.O.'s testimony was direct and unequivocal. She acknowledged that while

she loved her mother, she would not "feel comfortable" spending the night at her mother's residence

and that she wanted to be adopted by "the right family." Further, she identified her foster family as

"the right family." Based on her "intelligence, understanding, age and experience," the factors set

out in Code § 20-124.3(8), C.O. was entitled to have the court consider her reasonable preference as

it determined her best interests.

WCDSS did not contest the fact that appellant loved her daughter and wished to have

custody of her. That, however, is not the end of the inquiry. For the vast majority of C.O.'s life,

appellant had not been able to remedy the conditions that resulted in C.O. remaining in foster care

due to appellant's abuse or neglect. "As many courts have observed, one permissible measure of a

parent's future potential is undoubtedly revealed in the parent's past behavior with the child."

Toms, 46 Va. App. at 268, 616 S.E.2d at 770 (quoting Petry v. Petry, 41 Va. App. 782, 793, 589 S.E.2d 458, 463 (2003)). We have held that it is not in a child's best interest to "wait a significant period of time to 'find out when, or even if, a parent will be capable of resuming [her] responsibilities.'" Farrell, 59 Va. App. at 411-12, 719 S.E.2d at 347 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)). Considering C.O.'s age, the length of time she resided in a DSS placement, and appellant's failure to remedy the conditions that caused her to be placed in foster care in 2005, the trial court did not err in finding that it was in C.O.'s best interests to terminate appellant's residual parental rights and approve the foster care plan with the goal of adoption.

## III. CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.