COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

JONATHAN BURTON, SR.

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
FEBRUARY 28, 2017

v.        Record No. 0958-16-1

NORFOLK DEPARTMENT OF
  HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

Lynn B. Perkinson (Lane & Perkinson, P.C., on brief), for appellant.

Tamele Y. Hobson; Catherine R. Daugherty, Guardian *ad litem* for
the infant children (Office of the City Attorney, on briefs), for
appellee.

Jonathan Burton, Sr. ("appellant") appeals the termination of his residual parental rights to

his four children, M.B. (age sixteen), J.B. (age fifteen), B.B. (age twelve), and K.B. (age nine).[1]

Appellant asserts that the evidence was insufficient to prove that he failed to provide or substantially

plan for the children's future for a period of six months after their placement in foster care.  He also

contends that the evidence was insufficient to prove that he was unwilling or unable to substantially

remedy the conditions which led to the children being placed in foster care.  Finding no error, we

affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The parental rights of the children's mother were also terminated in a proceeding in the
Norfolk Juvenile and Domestic Relations District Court.  The record does not reflect that she
appealed from that decision.

## I.  BACKGROUND

On appeal, we consider the evidence in the light most favorable to the Norfolk Department of Human Services ("NDHS"), the prevailing party at trial.  Toms v. Hanover Dep't. of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005).

Appellant had custody of his three oldest children from 2005 until August 2010.  After a 2010 hearing, the children's mother was granted custody, and appellant did not have any further contact with the children until 2013.  NDHS became involved with the family in August 2013, when the Norfolk Juvenile and Domestic Relations District Court ("JDR court") entered preliminary protective orders on behalf of the children, due to their mother's substance abuse issues.  Because the mother was unable to remedy the situation, the children were removed from her home and placed in foster care in November 2013.

Shortly thereafter, appellant was advised that the children had been placed into foster care, and NDHS attempted to provide him with services so the children could transition from foster care into his custody.  At that time, appellant had not had any contact with the children for three years and was not in a financial position to assume their custody.  NDHS referred him to a parenting program and provided him employment and housing referrals.

Although appellant initially attended his scheduled visitations with the children, he began missing visitations in September 2014.  At one point, appellant was incarcerated for his failure to pay child support.  Despite the social worker's warning, he persisted in telling the children that it was their mother's fault he was incarcerated.  On another occasion, as a result of his disruptive behavior, his visitation rights were suspended at the residential treatment facility where one of the children was placed.  The visitation was suspended based on a recommendation from the child's therapist.

Due to appellant's failure to make any progress toward the goal of reunification with the children, in January 2016, NDHS filed for a permanency planning hearing with the goal of termination of parental rights and adoption. Following a trial, the JDR court accepted the plan and terminated appellant's residual parental rights.

Appellant appealed, and the circuit court held a hearing on May 24, 2016. At trial, four mental health professionals testified that several of the children were suffering from varying diagnosed mental health conditions and all of the children had behavioral issues. The professionals recommended that the children be placed with a caregiver who would provide them with a structured and consistent environment, who is sensitive to their past experiences, and is understanding of their mental health needs. Additionally, due to the aggressive and sexualized behavior of some of the children, the mental health professionals suggested that they all have separate bedrooms.

During his testimony, appellant disputed NDHS's contention that he had been provided with housing and employment referrals. He testified that for the preceding five years, he sporadically resided with his mother and sixteen-year-old cousin in a two-bedroom apartment. He stated that he was on a waiting list for his own one-bedroom apartment, but hoped that he could acquire a larger home if he was granted custody of the children. Appellant also testified that he was employed full-time performing construction work, but he could not provide any documentation verifying his employment or income. Finally, he denied acting inappropriately or being disruptive during any of the visitations.

The court found that it was in the children's best interests to terminate appellant's residual parental rights based on Code § 16.1-283(C)(1) and (2). This appeal followed.

## II. STANDARD OF REVIEW

In our review of a court's decision to terminate residual parental rights, "[t]he trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). We grant all "reasonable inferences" to the prevailing party's evidence. Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 580, 625 S.E.2d 670, 674 (2006).

Further, "[t]he circuit court has 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Eaton v. Washington Cty. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley, 9 Va. App. at 329, 387 S.E.2d at 796).

## III. ASSIGNMENT OF ERROR ONE

Appellant's residual parental rights were terminated pursuant to Code § 16.1-283(C)(1) and (2).[2] He contends that termination based on Code § 16.1-283(C)(1) was improper because NDHS

---

[2] Code § 16.1-283(C) states in pertinent part:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> 1. The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative

failed to prove that he did not maintain continuing contact with his children or substantially plan for their future for six months after the children entered foster care. Appellant argues that his visitation with his children ceased due to the arbitrary suspension by the children's social workers and because appellant was incarcerated during some of the scheduled visitations.

The evidence established that appellant started missing visitations in September 2014. His visitation with one of his children, who was in residential care due to mental and emotional problems, was suspended at the request of the child's therapist because appellant made inappropriate remarks to the child during the visitation. During another visitation with his other children, appellant blamed the children's mother for his incarceration.

At trial, appellant testified that the social workers "basically wanted me to change my thinking of speaking to my children on telling them certain things, and I told them that I wasn't going to do that. . . . I told them, just like any anybody else would tell them, '[d]o not tell me what I can and cannot say.'" When asked about his inconsistent visitation with the children after September 2014, appellant blamed the social worker for not maintaining contact with him.

We previously have acknowledged that Code § 16.1-283(C) "specifically requires a showing that DSS has provided 'reasonable and appropriate' services to a delinquent parent prior to terminating his rights." Toms, 46 Va. App. at 269, 616 S.E.2d at 771. Additionally, "the statute establishes a time frame after the child has entered foster care for the parents 'to receive

agencies to communicate with the parent or parents and to strengthen the parent-child relationship . . . or

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

- 5 -

rehabilitative services to enable them to correct the conditions that led to foster care placement.'" Id. (quoting L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 57, 581 S.E.2d 886, 889 (2003)).

During the time that appellant's children were in foster care, NDHS provided him numerous referrals, beginning in early 2014. Appellant did not avail himself of the referrals and was unable to establish that he had suitable housing for the children or stable employment by the time of the trial. He did not submit his first housing application until August 2015, more than eighteen months after the children entered foster care, and he testified that from 2014 through the trial date, he had been living with his mother and cousin in a two-bedroom apartment. Likewise, although he alleged at trial that he had been employed in a full-time position for two months, he failed to produce any documentation verifying his employment and income. He did not complete the parenting program that NDHS suggested and behaved inappropriately at visitations with the children.

Therefore, the evidence established that appellant was unable to plan for the future of the children during the six months after they entered foster care, as required by Code § 16.1-283(C)(1). We find that the court did not err in determining that NDHS met its burden, and in accepting the foster care plan and terminating appellant's residual parental rights.

## IV. ASSIGNMENT OF ERROR TWO

Appellant also asserts that NDHS did not establish that he was unwilling or unable within twelve months to substantially remedy the conditions that led to or required continuation of the children's placement. Therefore, he contends that termination under Code § 16.1-283(C)(2) was improper.

Appellant relies on Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 754 S.E.2d 922 (2014), to support his position that because he was not personally involved in the children's living situation at the time they were placed into care, the evidence was insufficient to

establish that termination was appropriate under Code § 16.1-283(C)(2). Thach, however, is distinguishable from the present case. In that case, the child's father, like appellant, was not living in the home when the conditions occurred that caused the child to be placed in foster care. Thach, 63 Va. App. at 162-63, 754 S.E.2d at 924-25. However, the father was not offered services until eleven months after the child had been removed. Id. at 172, 754 S.E.2d at 929. Additionally, at the time of the termination hearing, the father had completed parenting classes, undergone the recommended psychological evaluation, and had started home-based services. Id. Further, there were no longer any concerns about the home being an inappropriate residence for the child. Id.

Appellant's situation differs significantly. Appellant was notified that the children were in foster care soon after their placement. NDHS offered him services at the outset of the placement. During the thirty months from when the children were placed in foster care to the circuit court trial, appellant was unable to remedy the conditions that led to their placement, despite the efforts of the social and rehabilitative agencies. He also was uncooperative with the agencies and chose not to avail himself of their assistance. Therefore, the court did not err by terminating his parental rights under Code § 16.1-283(C)(2).

Finally, Code § 16.1-283(C) provides that the court must find "based upon clear and convincing evidence, that [termination] is in the best interests of the child." The factors to be considered in determining the best interests of the child include "[t]he age and physical and mental condition of the child . . . [t]he age and physical and mental condition of each parent . . . [t]he needs of the child . . . and [s]uch other factors as the court deems necessary and proper to the determination." Code § 20-124.3; see also Barkey v. Commmonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986). Each of appellant's four children has special needs as a result of mental and emotional challenges that require them to be placed with a caregiver who can provide structure and consistency. NDHS has proven that appellant cannot do so.

Further, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). At the time of the hearing, appellant was in the same position that he was nearly three years earlier, when the children came into care. He could not establish that he had regular employment and a stable residence sufficient for the children. He was unable to provide for their special needs, and he failed to accept the assistance offered by NDHS. Therefore, the court did not err by finding that termination of appellant's residual parental rights was justified pursuant to Code § 16.1-283(C)(1) and (2).

Affirmed.