COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chafin and Senior Judge Clements
Argued at Lexington, Virginia


JAMES ROBERT LEE MASON, III

v.        Record No. 1422-17-3

HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


JAMES ROBERT LEE MASON, III

v.        Record No. 1423-17-3

HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


JAMES ROBERT LEE MASON, III

v.        Record No. 1424-17-3

HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION[*] BY
JUDGE JEAN HARRISON CLEMENTS
JULY 3, 2018


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

H. Eugene Oliver, III (Evans Oliver, PLC, on brief), for appellant.

Kim Van Horn Gutterman, Assistant County Attorney; Danita S.
Alt, Guardian *ad litem* for the minor children, for appellee.


Appellant is the biological father of J.M., born in March 2011, and twins, J.R. and N.,

born in April 2013.  In response to a complaint about the care appellant was providing to the

children, the Harrisonburg Rockingham Social Services District (HRSSD) removed them from

appellant's residence in March 2016 and placed them in foster care.  In January 2017, HRSSD

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

petitioned the juvenile court to terminate appellant's parental rights.[1]  Appellant appealed the

ruling of the juvenile court to the circuit court, which conducted a *de novo* hearing on August 28,

2017.  The court found that clear and convincing evidence supported termination of appellant's

parental rights under Code §§ 16.1-283(B) and 16.2-283(C)(2).[2]

Appellant argues on appeal that the evidence did not show that the abuse and neglect the

children suffered presented a serious and substantial threat to their life, health, or development,

as required under Code § 16.1-283(B).  He further argues that the evidence did not support

terminating his parental rights pursuant to Code § 16.1-283(C)(2) because his leg injury in

October 2016 and incarceration from February through June 2017 for probation violations

provided good cause for his inability to remedy the conditions that led to the children's

placement in foster care.  Appellant also contends HRSSD did not make reasonable and

appropriate efforts to assist him in remedying those conditions.

BACKGROUND

In March 2011, two days after J.M. was born, but before he was released from the

hospital, HRSSD investigated a complaint about the unsanitary living conditions at appellant's

residence.  There was no running water, the toilet was overflowing with feces, and the house was

filthy.  The agency determined that the house was not a fit environment for a baby and made

---

[1] HRSSD also petitioned for termination of the boys' mother's parental rights.  Mother
(Joan) appealed the juvenile court's ruling to circuit court and appeared at the hearing, but she
voluntarily relinquished her rights before the court ruled.

[2] HRSSD initially sought to terminate appellant's parental rights under Code
§ 16.1-283(C)(2).  When appellant objected during the hearing to admitting evidence regarding
any other grounds for termination, the trial court stated that it could consider all applicable
grounds at a *de novo* hearing and could find multiple grounds for termination if the evidence
supported them.  Appellant's motions to strike were based only on Code § 16.1-283(C)(2), and
the court did not address other grounds in denying the motions.  In closing arguments, however,
all the parties discussed Code § 16.1-283(B), as well as Code §§ 16.1-283(C)(1) and (C)(2).  The
trial court found that Code § 16.1-283(C)(1) did not apply and terminated appellant's parental
rights pursuant to Code §§ 16.1-283(B) and 16.1-283(C)(2).

arrangements for J.M. and Joan to stay with her mother until conditions at the house could be corrected. After the twins, J.R. and N., tested positive for marijuana at birth in April 2013, HRSSD offered help with parenting skills through an agency that provided hands-on assistance for up to one year to new parents, but appellant declined the service. In response to an incident of domestic abuse in 2015, HRSSD suggested that appellant and Joan get marriage counseling. They agreed to participate but never attended any sessions.

HRSSD received a complaint in January 2016 that J.M., J.R., and N. were not being fed or bathed and were being looked after by appellant's daughters while appellant and Joan stayed in the bedroom. The girls were nine and twelve years old. They lived with their mother but spent every other weekend with appellant. When a social worker went to the residence to investigate, appellant showed her food in the cupboards. He also presented the children. The social worker noted that one child was wearing only a diaper that needed to be changed.

Another complaint was made on February 24, 2016 that the house was dirty and smelled bad and that appellant and Joan were smoking marijuana. A social worker and a police officer went to appellant's house on March 7, 2016. Appellant denied the allegations and refused to let the social worker inside because she would not tell him who had made the complaint. After appellant allowed the officer to enter, the officer saw a plastic straw on a plate on a stand next to the bed where the three boys were. Appellant said he had been prescribed Percocet for a back injury and that he crushed the pills and snorted the powder through a straw. The plate and straw tested positive for oxycodone. Drug tests were conducted on appellant, Joan, and the three boys. Appellant and the boys tested positive for marijuana, methamphetamine, and amphetamine. Joan tested positive for marijuana. Appellant could not explain why the boys had illegal drugs in their systems, but he later suggested that his ex-wife had arranged for a friend to put methamphetamine in bottles of soda that the boys drank. After receiving the drug test results,

HRSSD removed the children from the home on March 24, 2016, and initiated petitions for abuse and neglect. The agency discussed placing the children with a relative, but Joan's family lived in Michigan and appellant's family did not have adequate housing.

At a hearing on September 2, 2016, the circuit court found that the children were abused and neglected. The court based its finding on the illicit drug use, domestic violence, and lack of supervision in the home. The court approved an initial foster care plan. The plan required in part that appellant get suitable housing and successfully complete recommended programs in substance abuse, domestic abuse, and parenting skills. Appellant finished one program on substance abuse in August 2016, but still had "minimal insight into his addiction," and he did not enroll in another suggested program. He sporadically attended classes pertaining to domestic abuse and parenting skills, but he did not complete either program. He also did not complete a recommended psychological evaluation, which was intended to identify areas in which support was needed to increase his parenting capacity.

Dr. Rhonda Weber began providing therapy to the children in June 2016. She had held at least twenty sessions with each child at the time of the termination hearing. When the boys first went into foster care, they hoarded food, had difficulty sleeping, and displayed aggressiveness, abnormal play behavior, and sexualized behavior. They were placed in the same foster home initially but were moved to separate homes within a few months in an effort to remedy their behavior. Dr. Weber said that all three boys had post-traumatic stress disorder (PTSD) and could not stay together in the same foster home because being together triggered unmet needs and memories of living with appellant. Dr. Weber had recommended that visits between the children and their parents be suspended in October 2016 because the visits were extremely stressful to the boys and their behavior regressed after seeing appellant and Joan. The boys' behavior improved after the visits ended, and HRSSD did not resume the visits because appellant was making only

limited progress in correcting the conditions that had led to removing the children from his home.

ANALYSIS

The paramount concern in a case involving the termination of parental rights is the best interests of the child. See, e.g., Eaton v. Washington Cty. Dep't of Soc. Servs., 66 Va. App. 317, 331, 785 S.E.2d 231, 238 (2016). Sitting as the fact finder, the trial court has broad discretion in determining the child's best interests. See id. The court's factual findings will not be disturbed on appeal unless they are plainly wrong or lack supporting evidence. See Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 44, 764 S.E.2d 284, 289 (2014). We view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to HRSSD, the prevailing party below. See id. at 40, 764 S.E.2d at 287.

Because the trial court held that appellant's parental rights could be terminated under both Code § 16.1-283(B) and § 16.1-283(C)(2), if we determine that one alternative is sufficient to sustain the court's ruling, we need not consider the other alternative. See Eaton, 66 Va. App. at 330 n.6, 785 S.E.2d at 238 n.6 (having found the trial court did not err in terminating appellant's rights based on Code § 16.1-283(B), this Court did not address appellant's assignment of error pertaining to Code § 16.1-283(C)). Accordingly, we hold that the evidence supported the trial court's ruling under Code § 16.1-283(B) and do not address appellant's second and third assignments of error pertaining to § 16.1-283(C)(2).

A termination of parental rights under Code § 16.1-283(B) requires the trial court to find by "clear and convincing evidence" that termination is in the best interests of the child, the abuse or neglect suffered by the child "presented a serious and substantial threat to his life, health or development," and "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return

to his parent . . . within a reasonable period of time." Code § 16.1-283(B). Because "[t]he statute recognizes that a child is already in danger by virtue of the abused or neglected finding," the court must "make a prospective determination" that the parent can rehabilitate himself in order to return the child to a "safe environment" within a reasonable time. Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 412, 719 S.E.2d 329, 347 (2012).

Appellant acknowledges that the children suffered abuse and neglect but contends they did not experience "a serious and substantial threat to their life, health or development," as required under Code § 16.1-283(B). Appellant argues that even though the children, then five and three years old, tested positive for methamphetamine and marijuana in March 2016, there was no evidence that the drugs had any residual effect on them. However, J.R., whom Dr. Weber said was the most developmentally delayed of the boys, had been referred to a neurologist due to seizures and concerns about drug exposure. J.R. also received speech therapy and physical therapy. When Dr. Weber first saw J.R., his body movements were "jerky" and abnormal. She described him as fearful and anxious. In play therapy, J.R. was preoccupied with babies being in danger and needing to feel safe, which she said was not typical behavior for children who had no reason to be hypervigilant about their safety. He also was very aggressive toward other children.

When N. first entered foster care, he received early intervention services through a counseling service and he continued to receive speech and occupational therapy. He initially hoarded food and ate so fast he would choke or vomit. N. was prone to tantrums where he completely lost control, kicking, yelling, and throwing things. He has a skin condition that requires a significant amount of care and was diagnosed as having a compromised immune system. His doctor attributed N.'s asthma, allergies, and nosebleeds to the unhealthy condition of appellant's home prior to N.'s removal. At the time of the termination hearing, appellant had

moved to a two-bedroom trailer, but there was no evidence that it would provide adequate housing for the children.

J.M. exhibited anxiety, hyperactivity, anger, and impulsive behavior. Because the children were often unsupervised while their parents used illegal drugs in the home, five-year-old J.M. took on the parental role of caring for his younger brothers. In foster care, J.M. continued to feel that he had to be in control of everything, which Dr. Weber said was typical of children who had taken on too much responsibility at a young age. In turn, J.M.'s normal social and emotional development was delayed.

Dr. Weber testified that all three boys suffered from PTSD and could not be placed in the same foster home because being together triggered their unmet needs and memories that caused them to relapse in their behaviors. Dr. Weber said the boys would require intense supervision if they lived together in the same home. She said that they needed more attention from adults to compensate for not having had the attentive care they needed earlier in their lives.

J.M. was six years old at the time of the hearing, and J.R. and N. were four years old. They were overcoming their behavioral and developmental problems and were content in their foster homes, which were potential adoptive homes for them. The fact that the boys were doing well after a year in foster care did not mean they had not experienced "a serious and substantial threat to [their] life, health or development" from the abuse and neglect they had suffered while living with appellant.

One way to measure a parent's "future potential" regarding his children is to examine his past actions. Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268, 616 S.E.2d 765, 770 (2005) (quoting Petry v. Petry, 41 Va. App. 782, 793, 589 S.E.2d 458, 463 (2003)). Appellant, age 40, abused alcohol and illegal drugs, received disability payments for a back injury, and was

not employed.  He had a history of domestic abuse involving the boys' mother.  Complaints of abuse and neglect regarding his other children had been made against him.[3]

Appellant did not utilize fully the services that HRSSD offered both before and after the children were placed in foster care.  He declined parenting services that the agency offered after J.R. and N. were born in 2013.  He did not participate in marriage counseling that HRSSD suggested in 2015 after an incident of domestic abuse.[4]  After the children were placed in foster care, appellant began, but did not finish, recommended programs on domestic abuse and parenting skills.  He completed one program on substance abuse in August 2016, but he did not enroll in an additional suggested substance abuse program and continued to abuse alcohol, even though a condition of the child protective order entered in May 2016 prohibited appellant from using alcohol and illegal drugs.  Proof that a parent has "habitually abused" or is "addicted to intoxicating liquors, narcotics or other dangerous drugs," which "seriously impair[]" his parental ability, and "has not responded to or followed through with recommended and available treatment" is *prima facie* evidence that he cannot likely remedy the conditions that resulted in the child's foster care placement.  Code § 16.1-283(B)(2)(b).  See Butler v. Culpeper Cty. Dep't of Soc. Servs., 48 Va. App. 537, 550, 633 S.E.2d 196, 202 (2006) (affirming termination of mother's parental rights to her child, V.L., under Code § 16.1-283(B) because she did not take advantage of services offered to overcome her drug addiction).[5]

---

[3] In 2010 and 2011, HRSSD had investigated abuse and neglect complaints concerning appellant's two teenage children.  They were placed in foster care in 2012, due in part to appellant's continued substance abuse.

[4] Following an incident in June 2016, in which appellant broke some ribs in a fight after discovering Joan having sex with another man, HRSDD suggested that appellant stay apart from Joan, but he did not do so.  During a drunken brawl in October 2016, Joan stabbed appellant in the leg.

[5] This Court held that with regard to appellant's child, A.L., her appeal pursuant to Code § 16.1-283(B) was "moot" because the trial court also had terminated her parental rights under

The trial court found that there was "a copious amount of evidence regarding the absolute developmental effects that the behavior of [appellant] had on these children and their continued struggles . . . ." The court reasonably concluded that appellant, within a reasonable time, could not remedy the conditions that precipitated the children being found abused and neglected and placed in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)). Accordingly, we hold that the trial court did not err in terminating appellant's parental rights under Code § 16.1-283(B).

Affirmed.

Code §§ 16.1-283(C)(1) and (C)(2) and appellant had not challenged that ruling. See Butler, 48 Va. App. at 550, 633 S.E.2d at 203.