COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Malveaux

UNPUBLISHED

CLAYTON LANCASTER

v.     Record No. 0278-18-2

PETERSBURG DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
DECEMBER 4, 2018

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

(Katina C. Whitfield, on brief), for appellant. Appellant submitting
on brief.

(Joan M. O'Donnell; Christopher B. Ackerman, Guardian *ad litem*
for the infant child; Old Towne Lawyers, LLC, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.

On January 22, 2018, the Circuit Court of the City of Petersburg entered separate orders

terminating the residual parental rights of Clayton Lancaster ("Lancaster") and Meredith Horton

("Horton")[1] in regard to their son, R.H.[2] In his appeal, Lancaster argues that the circuit court erred

in terminating his residual parental rights and erred in finding it to be in R.H.'s best interests to

approve the goal of adoption.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Horton also appealed to this Court the order terminating her residual parental rights.
See Horton v. Petersburg Dep't of Soc. Servs., No. 0275-18-2, this day decided.

[2] We use initials, instead of the child's name, in an attempt to better protect his privacy.

## I. BACKGROUND[3]

On appeal, we are required to view the evidence "in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Therefore, in this appeal, we view the evidence in the light most favorable to the Petersburg Department of Social Services (DSS), the prevailing party below.

In March 2015, Child Protective Services received a complaint against Lancaster and Horton in reference to their three-year-old son, R.H. The complaint alleged that there was insufficient food in the home, that the parents were using drugs, and that a neighbor had to care for R.H. Upon investigation, the Petersburg DSS found the home to be filthy and with insufficient food for the child. The parents also tested positive for illegal substances while R.H. was in their care. Lancaster tested positive for marijuana and benzodiazepines, and Horton tested positive for benzodiazepines, marijuana, and cocaine. On March 13, 2015, R.H. was physically removed from the home. On March 20, 2015, the Petersburg Juvenile and Domestic Relations District (J&DR) Court placed R.H. in the legal custody of his maternal grandmother ("grandmother"), under the supervision of the Petersburg DSS. On May 6, 2015, the J&DR court issued an order requiring the parents to remain drug free, submit to drug screening, maintain stable housing, participate in a substance abuse class, and work with DSS.

In August 2015, DSS discovered that grandmother had traveled out of town, leaving R.H. in the care of Lancaster. Doing so violated the safety plan that was in place and the specific

---

[3] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary in order to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1, 805 S.E.2d 775, 777 n.1 (2017).

instructions given to grandmother. Consequently, R.H. was removed on August 20, 2015, and on August 27, 2015, the J&DR court granted temporary legal custody to the Petersburg DSS. At that time, the court found that "Father continues to use illegal substances and has not complied with DSS' recommendation for treatment."

On October 21, 2015, the J&DR court approved a foster care plan that placed R.H. with foster parents. The foster care plan included a number of responsibilities and requirements with which Lancaster was to comply, including, *inter alia*, requirements to maintain stable, adequate, and independent housing with no interruption in utilities for at least six months; to obtain and maintain steady employment; to participate in a substance abuse evaluation and any recommended treatment; to undergo a psychological evaluation; to take parenting classes; and to participate in supervised visitation with R.H.

In January 2016, in its foster care service plan review, which identified the goal of returning R.H. home to be with his parents, DSS reported that Lancaster was making "minimal progress" and missed two supervised visits. On February 9, 2016, Lancaster completed his court-ordered psychological evaluation. In its June 2016 foster care service plan review, which maintained the goal of returning R.H. to be home with his parents, DSS reported that Lancaster obtained employment in February 2016, but was terminated in April 2016 and was working "odd jobs." He tested negative on drug screenings and participated in supervised visits with R.H. on a sporadic basis. In November 2016, DSS noted "some progress," including that Lancaster and Horton had obtained appropriate housing and had completed parenting classes; however, there "was still some inconsistencies with the employment" and Lancaster tested positive for using marijuana.

At the time of the March 2017 DSS foster care service plan review, DSS was in the process of attempting to initiate overnight stays of R.H. with his parents. However, the

overnight stays never took place because, according to the testimony of the foster care social worker to whom R.H. was assigned, "the parents had just regressed." Specifically, R.H.'s parents no longer had independent housing, but were living with grandmother, Lancaster had not completed substance abuse treatment, and Lancaster did not have verified employment. Lancaster attended some supervised visitations with R.H. in January and February 2017. In its March 2017 foster care service plan review, DSS continued to recommend the goal of returning R.H. home to be with his parents, but the J&DR court disapproved the goal and directed DSS to submit a new plan with the goal of adoption. In May 2017, DSS submitted a plan with the goal of adoption, which the J&DR court approved in June 2017.

On January 22, 2018, the City of Petersburg Circuit Court held an *ore tenus* hearing concerning termination of the parents' parental rights. Evidence was presented that, as of the date of the hearing, DSS was not aware of Lancaster's place of abode. Lancaster's last visitation with R.H. and last contact with DSS was in March 2017. Lancaster had not completed substance abuse treatment, did not have his own housing (although he testified he was living in a friend's trailer), and did not have employment (although he testified he had applied for – and was awaiting a decision regarding – disability benefits in December 2017).

During the hearing, R.H.'s therapist, who was qualified by the circuit court as an expert in child psychology, testified that he had been meeting with R.H. for several years and had conducted approximately thirty sessions with R.H. He testified that, although at first R.H. was consumed with "safety kind of issues and predictability kind of issues," R.H. had "come a very, very long way." The therapist also opined that "as long as he's in a predictable environment, he's getting the services he needs, there's no reason to think he's not going to have a good future and going to continue to progress." The therapist also stated that R.H. is aware that there may be an adoption in the future or some change from his current foster home.

- 4 -

At the conclusion of the *ore tenus* hearing, the circuit court approved a foster care plan with a final goal of adoption and terminated the parents' residual parental rights pursuant to Code § 16.1-283(C)(2).

## II. ANALYSIS

When reviewing a circuit court's decision to terminate residual parental rights,

> this Court presumes that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." The circuit court has "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Therefore, in a case involving termination of parental rights, "[t]he trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"

Eaton v. Wash. Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (first quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005); then quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990); and then quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659).

### A. Termination of Parental Rights

The circuit court terminated Lancaster's residual parental rights pursuant to Code § 16.1-283(C), which states, in pertinent part:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . .
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Lancaster's first argument, on brief, is that "[t]here was no evidence presented to suggest that Lancaster would be unwilling or unable to remedy substantially, the conditions (not following the safety plan) that led to [R.H.] being placed in the custody of PDSS." This argument, however, ignores the language that immediately follows the language of Code § 16.1-283(C)(2) quoted above. The statute continues:

> Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court . . . shall constitute prima facie evidence of this condition.

The evidence presented at the *ore tenus* hearing showed that R.H. was removed from his parents' custody on March 20, 2015, and placed in grandmother's custody. R.H. was subsequently removed from grandmother's custody and placed in DSS's custody on August 27, 2015. In addition to the May 6, 2015 court order that Lancaster was to remain drug free, submit to drug screening, maintain stable and independent housing, participate in a substance abuse class, and generally participate and work with DSS, on October 21, 2015, the court approved a foster care plan that required Lancaster, among other things, to maintain stable housing for at least six months, to obtain and maintain steady employment, to participate in a substance abuse evaluation and any recommended treatment, to participate in visitation with R.H., to refrain from alcohol and drug use, and to notify DSS of any change in residence.

At the time of the *ore tenus* hearing on January 22, 2018, the circuit court noted that twenty-nine months had passed since R.H. had been placed in foster care – far beyond the twelve months stated in the statute to substantially remedy the problems that placed R.H. there. Although Lancaster had far more time in which to "remedy substantially the conditions" which led to foster care placement than provided for in Code § 16.1-283(C)(2), he failed to comply

with virtually any of the foster care plan requirements listed *supra*. He failed to maintain stable, independent housing for six months. Before he applied for disability benefits in December 2017, he worked "odd jobs" and did not have verified employment since March 2017. There is no evidence he completed substance abuse treatment. He continued, by his own admission, to drink alcohol, and in 2016, he tested positive for use of marijuana. He had not contacted DSS for months and failed to keep DSS informed of his current residence. Lastly, he had not attended visitation or otherwise seen R.H. since March 2017.

In view of all these facts, there was more than enough evidence for the circuit court to conclude, based on Lancaster's failure to comply with the foster care plan, that Lancaster – without good cause – was unwilling or unable to remedy substantially the conditions that led to R.H.'s foster care placement. In short, when considering the totality of the circumstances, it is clear Lancaster did not substantially remedy the situation that placed R.H. in foster care. Consequently, it is clear that the circuit court's decision terminating Lancaster's residual parental rights was not plainly wrong or without evidence to support it.

## B. Goal of Adoption

Lancaster's second assignment of error, on brief, is that it was not in R.H.'s best interests for the court to approve the goal of adoption. Lancaster argues that, because R.H.'s therapist noted R.H. suffered from adjustment disorder and because placement in an adoptive home would require R.H. to be moved again since the foster home in which he was living was allegedly not an adoptive home, it was not in R.H.'s best interests to be moved simply in order to be adopted.

Even assuming that the court's approval of the permanent goal of adoption would require R.H. to move out of his current foster home, Lancaster's argument fails. As noted *supra*, the circuit court remarked that R.H. had been in foster care for twenty-nine months by

the time of the January 22, 2018 *ore tenus* hearing. Since Lancaster clearly had not substantially remedied the conditions which led to R.H.'s placement in foster care, his request to the court, in essence, was to give him more time to do so. However, considering Lancaster's record, the circuit court also noted that whatever temporary improvements Lancaster made, he repeatedly regressed. The circuit court concluded in referring to Lancaster and Horton, "There may be periods of where they're sober, and there may be periods where they're doing okay, but based upon the testimony I heard today, we're going right back to where we was, and that's not beneficial to [R.H.]."

This Court has stated, "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In light of that principle, considering the totality of the evidence in this case, the circuit court certainly could have reasonably concluded that it was clearly in R.H.'s best interests to terminate Lancaster's residual parental rights and then to approve the goal of adoption.

III. CONCLUSION

In light of Lancaster's failure to comply with many, if not most, of the requirements imposed upon him by the foster care plan approved by the J&DR court on October 21, 2015 (namely, his failure to maintain stable housing for six months, to maintain stable employment, to complete substance abuse treatment, to refrain from alcohol and drug use, to maintain contact with DSS, and to participate in visitation with R.H.), there was *prima facie* evidence that Lancaster was unwilling or unable to remedy substantially the conditions which led to R.H.'s placement in foster care. Furthermore, in light of the fact that R.H. had been in foster care for twenty-nine months, which is well beyond the twelve months provided in Code

§ 16.1-283(C)(2), we cannot say that the circuit court's conclusion – that it was in R.H.'s best interests to terminate Lancaster's parental rights and to approve the permanent goal of adoption – was plainly wrong or without evidence to support it.

For all of these reasons, we affirm the circuit court.

Affirmed.