COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Huff, Judges Alston and AtLee


TASHEIKA DESHAE DAVIS

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0951-17-3                          JUDGE ROSSIE D. ALSTON, JR.
                                                        FEBRUARY 13, 2018
LYNCHBURG DEPARTMENT OF
 SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                          R. Edwin Burnette, Jr. Judge

              (Matthew L. Pack; M. Pack Law, PLLC, on brief), for appellant.
              Appellant submitting on brief.

              (Susan L. Hartman, Assistant City Attorney; Killis T. Howard,
              Guardian *ad litem* for minor child, on brief), for appellee.
              Appellee and Guardian *ad litem* submitting on brief.


        Tasheika Deshae Davis (appellant) argues that the trial court erred in terminating her

parental rights.  She specifically contends that the evidence was insufficient pursuant to Code

§ 16.1-283(B)(2) and (C)(2).[1]  We disagree.

                                    BACKGROUND

        D., appellant's minor daughter, was first placed in the custody of Lynchburg's

Department of Social Services (LDSS) pursuant to a child in need of services (CHINS) petition

on May 21, 2014.  LDSS filed a preliminary child protective order with the Juvenile and

Domestic Relations District Court of the City of Lynchburg (J&DR court) in order to obligate

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant's second assignment of error refers to Code § 16.1-283(C), but appellant then
cites to language which appears in (C)(2).  It is clear appellant contests termination pursuant to
(C)(2), so we will address that assignment of error accordingly.

appellant to follow through with mental health services for D. The J&DR court made a preliminary finding that appellant was required to follow through on services for D. and found by a preponderance of the evidence that D. was abused and neglected. At the adjudicatory hearing, D. was found to be abused and neglected or at risk of abuse or neglect because she is a child "[w]hose parents . . . create[d] or inflict[ed], threaten[ed] to create or inflict, or allow[ed] to be created or inflicted upon such a child a physical or mental injury by other than accidental means, or create[d] a substantial risk of death, disfigurement or impairment of bodily or mental functions." D. was then temporarily placed in LDSS's custody on June 3, 2014. LDSS filed a petition for a permanency planning hearing in the J&DR court regarding D. on September 6, 2016. LDSS requested that the J&DR court approve its interim plan of "Relative placement/adoption" and continue custody of D. with LDSS. The J&DR court found that LDSS made reasonable efforts to reunite appellant with D. and approved LDSS's interim plan for six months. A second permanency planning hearing was set to review the interim plan on October 5, 2016 pursuant to Code § 16.1-282.1(B). On October 5, 2016, the J&DR court approved the permanent goal of relative placement or adoption, and custody of D. was continued with LDSS. Appellant appealed to the Circuit Court for the City of Lynchburg (trial court).

LDSS filed a petition for permanency planning hearing on October 19, 2016 to terminate appellant's parental rights; this petition was to be heard within thirty days. Again the J&DR court found that reasonable efforts were made by LDSS to reunite D. with appellant, LDSS's goals for D. were either relative placement or adoption, and that reasonable efforts were made to achieve that goal. A foster care review hearing was to occur within the next twelve months. Pursuant to a hearing on the matter, the J&DR court ultimately ordered the termination of appellant's parental rights on November 11, 2016, finding pursuant to Code § 16.1-283(B) that D. suffered from neglect or abuse which presented such "a serious and substantial threat to [] her

life, health, or development; and it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his or her parent within a reasonable time." The J&DR court also ordered that LDSS place the child for adoption, make permanent plans for adoption, and provide a progress report pursuant to Code § 16.1-283(F). Appellant appealed to the trial court.

At trial, LDSS employees noted that D. was under LDSS's care pursuant to a CHINS petition as of May 21, 2014. At that point, appellant was offered the following services: parenting education, substance abuse counseling with Horizon Behavioral Health (Horizon), independent living skills, building services, a psychological exam, family therapy, visitation, and bus passes. Appellant did not begin engaging with these services until August 2014, and then she inconsistently participated in the parenting classes, substance abuse counseling, independent living skills, family therapy, and visitation.

In this case, there was detailed testimony regarding D.'s mental health issues and her treatment in addition to appellant's compliance with LDSS's requirement that she provide D. the requisite care for her mental health issues. D. received a variety of services through LDSS for her mental health issues. D. was provided counseling from Wish You Well upon entering into LDSS's care. That counselor noted that upon entering into care, D. exhibited extreme behaviors and made suicidal threats. D. was "stealing[,] hoarding food, threatening to run away, [and was] very argumentative with adult figures." It was noted that D. struggles with oppositional defiant disorder. That counselor testified that additional services were provided to D. when she did not progress as hoped. Appellant's inconsistent attendance, lateness, or unavailability during D.'s therapy caused D. to decompensate. D. blamed herself for appellant's inconsistencies. As a result, D. would become unregulated and disrespectful towards authority figures.

D. was initially housed at Bridges Treatment Center (Bridges), and there D. received individual therapy two to three times a week, family therapy, and group therapy four times a week in addition to being enrolled in a therapeutic program. When admitted, D.'s Bridges' counselor indicated that D. displayed "behaviors that were aggressive, suicidal ideations, [and] suicidal gesture." While there, D. was hospitalized for suicidal ideation several times. Appellant was initially consistent in her participation but became inconsistent in attending family therapy and visitation. Appellant would cancel due to illness or poor weather. She received LDSS-provided bus passes, but they did not cure the issue. D.'s therapist reviewed the late policies with appellant three times and rescheduled several appointments. Appellant's lateness and failure to appear caused D. "to unravel." Therapy was not improving the relationship between D. and appellant, so D.'s therapist decided to institute facilitated visitations over lunch. Appellant remained inconsistent with her attendance. D. demonstrated significant progress, but Bridges employees noted no improvement in appellant's behavior. D. "need[s] a high level of structure and stability in order to function well so [appellant's inconsistencies] make[] it really difficult."

D. was discharged from Bridges on June 13, 2016 and was then housed at the Miller Home for Girls (Miller Home). Appellant would sometimes arrive late to visitation and therapy. D. would exhibit extreme anxiety in the times leading up to visitation with appellant. On one occasion, before appellant visited on D.'s birthday, D. made "some self-harm statements." On another occasion, D. "walked out of the building and refused to stay to see appellant" due to appellant's tardiness. Appellant was, however, consistent with visitation and counseling starting during the period from August 2016 until October 2016.

D. has been placed with a foster family since December 6, 2016, but she has struggled with transitioning from group homes to this new environment. She is currently enrolled in an

alternative education school after she was expelled from public school due to an altercation with another student. She has had issues adjusting to her foster family. D. is on psychotropic medication and continues to receive counseling through Wish You Well and therapeutic mentoring through Impact Living Services.

Turning to LDSS's other concerns regarding appellant, appellant tested positive for marijuana in October of 2014, positive for cocaine and marijuana twice in July of 2015, negative in August of 2015, and inconclusive in November of 2015. Appellant also refused a hair follicle test that month. She tested positive for marijuana in July of 2016 and refused a screen in September of 2016.

Regarding housing, appellant's two-bedroom apartment flooded; LDSS had concerns about mold and that the space was inadequate for a family of five.

LDSS had additional concerns about appellant. She began outpatient counseling and parenting services from August of 2016 to December of 2016 through Action Family Services. Appellant was initially inconsistent but became consistent in attending those sessions. Her counselor recognized appellant has struggled with substance abuse, depression, and anxiety. This counselor also observed visitations between D. and appellant. She noted that D. was "very [negatively] [a]ffected" by appellant's tardiness or absence. Based on appellant's patterns of inconsistency, the counselor was concerned whether appellant could provide D. an appropriate, stable environment and ensure that D. would receive the requisite treatment for her mental health issues. Appellant was also convicted of petit larceny third offense and obstruction of justice on April 11, 2017.

Appellant made a motion to strike at the end of LDSS's case. The trial court denied appellant's motion but noted that LDSS did not make it clear how a CHINS case became a termination case.

In her case-in-chief, appellant provided evidence of her progress. Appellant began substance abuse counseling at Horizon on March 22, 2017. At those sessions, appellant's mental health issues were also addressed. She missed appointments during one week due to a conflicting probation appointment. Appellant's Horizon counselor stated that she never screened appellant and relied on self-reported data. Appellant's case manager testified that she helped appellant with her medication and housing issues.

In its ruling, the trial court noted the J&DR court's voluminous factual findings that prompted it to place D. in LDSS's custody on May 21, 2014. It then stated "even without a determination of abuse and neglect [pursuant to subsection] (B)[,] then . . . [there is] no question [that there is] still clear and convincing evidence." "[B]ut the question then becomes has the parent . . . without good cause been unwilling or unable . . . within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions [pursuant to subsection (C)(2)]" that resulted in D.'s placement in foster care. It went on to note that D. is "a problem child," has "a discipline problem," was a truant, and was expelled from school. In reaching its independent conclusions, the trial court referred to statements made by the J&DR court, stating "we have heard repeatedly [that appellant] agrees to plans and then does not follow through with treatment and steps she has agreed that [D.] needs." It then noted that this detrimental pattern persisted: "[W]e have a child with a serious mental health issue that was not [and still is not] being adequately addressed."

The trial court also recognized that appellant also "had issues of her own which are not being addressed." Appellant was offered services but remained inconsistent in addressing LDSS's concerns "notwithstanding her recent effort to perhaps change her tune." Appellant still has inadequate housing—her five-person family (if including D.) lives in a two-bedroom apartment. Even though appellant is currently being counselled, the trial court concluded that

this did not demonstrate that "she has made any significant effort to address" her anxiety and depression. Her substance abuse problems resurfaced as late as March 2017. Appellant continues to miss or arrive late for appointments for herself and for D. With regard to visitation, the trial court admitted, "I have never seen an example of people and counselors bending over backwards . . . to accommodate [appellant's] schedule." It stated that changes in the few weeks preceding trial are "not enough . . . to rebut all of the other three years of behavior." The trial court was further troubled by the fact that D.'s home life has not been stabilized for three years—she was housed at Bridges, then housed at the Miller Home, and then placed in foster care at thirteen years of age. It concluded that termination is in D.'s best interest, finding based on clear and convincing evidence, that LDSS made reasonable and appropriate efforts and that appellant has not "in any way substantially remedied the conditions that led to the original child's foster care placement." It then "reluctantly" terminated appellant's residual parental rights and approved adoption as a goal.

In the trial court's termination order, it found, based upon clear and convincing evidence, that appellant "without good cause [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of [LDSS] pursuant to Code § 16.1-283(C)(2)" and that termination was in the best interest of D.

Now comes this appeal.

ANALYSIS

"When reviewing a termination of a parent's residual parental rights, we must acknowledge that '[t]he termination of residual parental rights is a grave, drastic[,] and irreversible action.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 342, 361, 719

S.E.2d 313, 323 (2012) (quoting Helen W. v. Fairfax Cty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991)). "While recognizing the seriousness of such a determination," id., we presume that the trial court has "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2004)). We will view the evidence in the light most favorable to LDSS, the prevailing party below, and grant it all reasonable inferences fairly deducible from the evidence. Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Appellant argues that the trial court erred in terminating her parental rights. She specifically contends that the trial court did not have sufficient evidence pursuant to either Code § 16.1-283(B)(2) [hereinafter (B)(2)] or (C)(2) [hereinafter (C)(2)]. (B)(2) states in pertinent part

> the residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment; (ii) an entrustment agreement . . . ; or (iii) other voluntary relinquishment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

(C)(2) states that a parent's residual rights may also be terminated when "it is in the best interests of the child and that:"

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The record established that the trial court terminated appellant's parental rights under both (B)(2) and (C)(2). The trial court noted that

> even without a determination of abuse and neglect, a child is placed in foster care as a result of Court commitment, . . . that's [subsection] B. So if we're going under that—you know, if we— even put aside abuse and neglect, then under that Code section, no question still clear and convincing evidence but the question then becomes has the parent . . . without good cause been unwilling or . . . unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to the required or continued of the child's foster care placement[.]

Considering the excerpted language, the trial court first discussed termination pursuant to (B)(2). It noted that it is not required to make an abuse and neglect termination pursuant to (B)(2) when it stated "if we . . . even put aside abuse and neglect, then under that Code section, no question still clear and convincing evidence." The trial court indicated that D. was placed under the custody of LDSS pursuant to a CHINS petition, satisfying the (B)(2) "court commitment" requirement. Then, the trial court next considered (C)(2) when it said

> but the question then becomes has the parent . . . without good cause been unwilling or . . . unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to *remedy substantially the conditions which led to the required or continued of the child's foster care placement*.

(Emphasis added). After providing its reasoning, the trial court terminated appellant's parental rights. Thus, at trial, the trial court terminated appellant's parental rights under both (B)(2) and (C)(2).

However, the trial court's order notes that appellant's parental rights were terminated only under (C)(2). It states that "[appellant] has without good cause been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement." The trial court also found that it was in the best interests of the child to terminate appellant's parental rights. "Appellate courts . . . 'presume' that the trial judge's order 'accurately reflects what transpired during the proceedings below.'" City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 561, 580 S.E.2d 463, 465 (2003) (quoting Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979)). Because a trial court speaks through its orders, id., we now consider whether the trial court erred when it terminated appellant's parental rights pursuant to (C)(2).[2]

---

[2] While appellate courts decide "cases 'on the best and narrowest ground available'" McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010), in the interest of completeness and understanding the gravity of terminating parental rights, we will analyze the trial court's (B)(2) findings. It is important to note that both (B)(2) and (C)(2) address similar grounds for termination, with (B) looking prospectively and (C)(2) looking retrospectively. Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466. "Despite these distinctions, we have previously upheld terminations under both subsections of Code § 16.1-283, as well as under one or either of the individual subsections." Id. (B)(2) applies here because D. was in LDSS custody pursuant to a CHINS petition. See (B)(2) (noting that "[t]he residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment"). The J&DR court made a subsequent determination of abuse and neglect. (B)(2) requires that termination be based on clear and convincing evidence, that it be in the best interest of the child, and that "it [] not [be] reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." The trial court detailed the J&DR court's (B)(2) findings. In addition, the trial court explicitly stated that "termination was in the best interest" of D. This determination is made "in light of the facts of each case." Eaton v. Wash. Cty. Dep't of Soc. Servs., 66 Va. App. 317, 331, 785 S.E.2d 231, 238 (2016) (indicating that in making this determination, the court considers, among other

(C)(2) requires (1) that the termination be "in the best interests of the child," (2) that "reasonable and appropriate" services be offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and (3) that, despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care," by clear and convincing evidence. D. was placed in LDSS's custody on May 21, 2014.

The trial court also found that termination was in the best interests of the child. D. has been in the system for over two years. "It is clearly not in the best interests of a child to spend a lengthy period of time to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). D. was first housed at Bridges, then at the Miller Home, and now has been placed with a foster family. D. has had issues transitioning into living with her foster parents but is demonstrating improvement. D. suffers from severe mental health issues involving suicidal thoughts and self-harm tendencies. Her mental health issues require a stable environment and constant support which she has not received from appellant for the past several years. Appellant's inconsistent behaviors caused "[D. to] become dysregulated because she just wasn't sure that [appellant] would follow through. If [appellant] didn't come . . . she would

things, the child's needs, age, physical and mental condition, as well as the parent's physical and mental condition, and the role the parent has played in the upbringing of the child). D. has been in the system for three years and has serious mental health issues. Appellant has and continues to demonstrate an inability to meet D.'s needs. Appellant still exhibits the same behaviors that led to D.'s initial placement into LDSS's custody; an inability to arrive on time or appear for visitation and therapy, an unwillingness to be treated for her own mental health and substance abuse issues, and inadequate housing. Appellant was offered services beginning in 2014; she employed those services inconsistently and only demonstrated progress in the past few months. Ultimately, the trial court made its independent determination and terminated appellant's parental rights pursuant to (B)(2). The trial court's decision was not plainly wrong or without evidence to support it. Id. at 324, 785 S.E.2d at 235.

- 11 -

decompensate, she would cry, she would be angry. There were times that she would be aggressive in programming." When appellant was informed that D. had these types of reactions to her inconsistent behavior, appellant failed to improve her behaviors.

The conditions pertaining to appellant include inadequate housing, inconsistency with services, and substance abuse and mental health issues. Appellant was offered the following services by LDSS: psychological evaluation, parenting education, drug abuse counseling, independent living skills, family therapy, supervised visitation, and bus passes. By the time of trial, appellant had not remedied her housing issue. She had three children and was pregnant, yet she lived in a two-bedroom apartment. With regard to many of LDSS's services, appellant was inconsistent. Appellant did undergo a psychological evaluation. Regarding parenting classes and substance abuse treatment, she had periods of compliance and noncompliance. Appellant refused and failed several drug screens in 2015, 2016, and 2017. The only indication that appellant has ceased using drugs is based on self-reports to her current counselor. Regarding independent living skills, appellant's attendance became sporadic. Appellant would reschedule or cancel appointments. Appellant was also inconsistent with therapy and visitation with D., arriving late or failing to appear. She blamed her attendance on transportation, but even when LDSS provided bus passes, that did not improve appellant's behaviors. This caused great distress and anxiety for D. Knowing this did not change appellant's behavior. With outpatient services, appellant received counseling for both substance abuse and mental health issues. Since March of 2017, appellant has been consistent in attending these dual-purpose sessions. It is of note that appellant was also convicted of a felony (petit larceny third offense) and obstruction of justice; at the time of trial, appellant was on probation. Although appellant made progress these past four weeks, this "was not sufficient to rebut the last three years of behavior." Further, D.'s

serious mental health diagnoses required appellant to "follow through" and ensure D. received the services she needs.  Appellant has failed to do so since 2014.

CONCLUSION

The trial court was not plainly wrong and had evidence to support the termination of appellant's parental rights under Code § 16.1-283(C)(2).  Therefore, we will not disturb the trial court's finding on appeal.[3]

<u>Affirmed.</u>

---

[3] The previous court-appointed counsel/guardian *ad litem*, Mr. Howard Killis, passed away on November 15, 2017.  The trial court appointed a replacement guardian *ad litem* by order dated January 8, 2018.