COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

AKSHAY KHADI

v.      Record No. 0174-20-3

WYTHE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 29, 2020

FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

(W. Grant Back; Warburton Law Offices, on brief), for appellant.
Appellant submitting on brief.

(Michael R. Bedsaul; Mary Foil Russell; Michael J. Sobey, Guardian
*ad litem* for the minor child; Sands Anderson, PC, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.


Akshay Khadi ("Akshay") appeals circuit court orders terminating his parental rights to his

child and approving the foster care goal of adoption. Akshay argues that the circuit court erred by

finding that the evidence was sufficient to change the foster care goal from return home to adoption

and that adoption was in the child's best interest. He further asserts that the circuit court erred in

terminating his parental rights under Code § 16.1-283(C)(2) and finding that termination was in the

child's best interest. Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err. Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Akshay and Isabel Gayosso-Leon are the biological parents to the child who is the subject of this appeal.[2] Cynthia Khadi ("Cynthia") is Akshay's wife and the child's stepmother.[3] Cynthia has known the child since the child was fifteen months old; Akshay and Cynthia had been married approximately four months before the child entered foster care.

On February 15, 2018, Akshay and Cynthia were arrested and incarcerated for possessing stolen vehicles, giving false identities to law enforcement, and contributing to the abuse or neglect of a minor.[4] As a result of their arrests, the Wythe County Department of Social Services (the Department) placed the five-year-old child in foster care. The Wythe County Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Gayosso-Leon voluntarily terminated her parental rights in the Wythe County Juvenile and Domestic Relations District Court.

[3] Cynthia appealed the circuit court's ruling approving the foster care goal of adoption. See C. Khadi v. Wythe Cnty. Dep't of Soc. Servs., Record No. 0171-20-3.

[4] Akshay pleaded guilty to a felony charge of unauthorized use of a vehicle and misdemeanor charges of contributing to the abuse or neglect of a minor and giving a false identity to law enforcement. Cynthia was convicted of misdemeanor charges of contributing to the abuse or neglect of a minor and giving a false identity to law enforcement.

preliminary removal order. The JDR court subsequently adjudicated that the child was abused or neglected and entered a dispositional order.

After Akshay's arrest, the United States Immigration and Customs Enforcement detained Akshay until late October 2018, when he was released on bond. Akshay later informed the Department that he was "completing paperwork to be approved to be in the United States"; however, at the circuit court hearing, the Department presented evidence that Akshay still had "pending court proceedings over his illegal immigration status."

The Department arranged for supervised remote and in-person visitation between Akshay, Cynthia, and the child; the Department provided Cynthia and Akshay with financial assistance for gas, hotel rooms, and food for some of the in-person visits. The Department had to intervene on "multiple occasions" during visits because Akshay made belittling comments and spoke inappropriately toward the child. He routinely questioned the child about her counseling and foster home, which caused her to "shut down and stop talking and interacting." The Department subsequently suspended in-person visitation based on the recommendations of a counselor and the child's guardian *ad litem.*

As part of the foster care plan, the Department referred Akshay for a psychological evaluation and parenting assessment, which he completed with Dr. Carroll. Dr. Carroll diagnosed Akshay with an "other specified personality disorder with paranoid, narcissistic, and antisocial traits." Dr. Carroll recommended individual counseling and parenting classes for Akshay, but he was "unsure of whether the recommendations would be effective, and had low confidence in [Akshay's] ability to benefit from service recommendations." Dr. Carroll's prognosis for Akshay was "'extremely guarded' with respect to whether [he] would engage in services and, if he does, whether [he] would be able to parlay the knowledge and skills gleaned from those services into parenting practices that rise above the threshold of abuse or neglect."

The Department also referred Akshay and Cynthia for an attachment assessment with the child. Sharon Brammer conducted the assessment and found that the child did not have a secure attachment relationship with Akshay. Brammer opined that Akshay's "disordered attachment patterns present a significant risk of escalating psychopathology if [the child] is in his custody." Brammer noticed that Akshay "exhibited both covert and overt aggression" toward the child and that he was "rigid and demanding, detached yet invasive, and unable to gain compliance." Brammer found that many of Akshay's behaviors toward the child were "totally inappropriate." Brammer proposed anger management classes, parenting classes, and counseling for Akshay. Brammer did not recommend placing the child with Akshay. Akshay disagreed with Brammer's conclusions and recommendations. Akshay denied any culpability and blamed others for the child being in foster care.

The Department further required Akshay to "[d]emonstrate the ability to serve as a caretaker that will not expose the [c]hild to criminal acts." Akshay failed to comply with this requirement. The Department discovered that Akshay had an outstanding arrest warrant in South Carolina for grand larceny, although Akshay repeatedly denied having the charge. While the child was in foster care, Akshay was charged with two new crimes, namely shoplifting and assault and battery against Cynthia. Cynthia alleged that Akshay had been physically abusive toward her and obtained an emergency protective order; however, at the time of the circuit court hearing, Cynthia and Akshay had reconciled and reunited.

On June 7, 2019, the JDR court terminated Akshay's parental rights and approved the foster care goal of adoption. Akshay and Cynthia appealed the JDR court's rulings to the circuit court.

On September 3, 2019, the parties appeared before the circuit court. At the time of the hearing, the child was seven years old and had been in foster care for approximately nineteen

months. The Department presented evidence that Akshay was argumentative and noncompliant. Akshay and Cynthia failed to maintain safe and stable housing. Akshay would not allow the guardian *ad litem* to visit their home, and the Department was unable to conduct a home study. Akshay repeatedly refused to provide financial information to the Department and only stated that he and Cynthia were "struggling financially" and had "limited" income. The Department had provided Akshay with a list of available housing in Wythe County and offered security deposit and rental assistance, but Akshay and Cynthia never pursued those options. Instead, after the JDR court terminated Akshay's parental rights, he and Cynthia moved to Roanoke, where they lived and worked at a hotel as "residential managers." Akshay's and Cynthia's combined monthly income was approximately $3,000.[5]

At the circuit court hearing, the social worker described Akshay as "combative, aggressive, and hostile." She testified that he "would send emails or make telephone calls to the Department on nearly a daily basis that were argumentative in nature." His anger and threatening behavior forced the Department to call law enforcement for assistance on occasion. The Department explained to the circuit court that Akshay's "refusal to accept any responsibility for the reasons why the [c]hild was removed and remained in foster care" was "a major barrier to reunification."

Although Cynthia was "not as hostile and combative" as Akshay, the Department did not recommend Cynthia as a placement "due to her criminal history, a prior finding of abuse and neglect being entered against [her] regarding her son approximately seven months before this [c]hild came into foster care, and a finding of abuse or neglect against her in relation to this [c]hild." Cynthia also did not comply with the plan's requirements because she refused to provide information about her housing and employment.

---

[5] Akshay did not have any documentation to prove his and Cynthia's income.

Akshay testified that after Brammer recommended counseling and anger management classes, he attended three individual counseling sessions and two anger management classes, but stopped after the JDR court terminated his parental rights even though funding was still available.[6] Akshay said that he attended "multiple sessions" with a parent mentor. Akshay testified that he had "begun to realize his responsibility in the [c]hild's placement in foster care" and that "his use of foul language around the [c]hild during visitation was inappropriate." He further acknowledged that his relationships with the Department and guardian *ad litem* had been "problematic."

The Department presented evidence that the child had been in counseling since November 2018. The child's counselor testified that they were "working on coping with a stressful life event and past trauma." The child's counselor opined that it would be "detrimental" to the child if Akshay and Cynthia resumed custody of the child. The counselor testified that the child was "doing very well" in her current foster care placement.

After hearing all the evidence, the circuit court terminated Akshay's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption. On January 8, 2020, the circuit court entered the termination of parental rights order and the permanency planning order approving the foster care goal of adoption. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as

---

[6] The Department presented evidence that Akshay attended only one anger management session and four individual therapy sessions.

- 6 -

here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Akshay argues that the circuit court erred by terminating his parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Akshay argued that he substantially remedied the conditions that led to, and required the continuation of, the child's placement in foster care because he had participated in "a multitude of services" and had obtained housing and employment. The circuit court, however, found that despite the Department's "more than reasonable efforts to assist" Akshay in reuniting with the child, Akshay "failed to make substantial progress."

Akshay completed the psychological evaluation and attachment assessment, and both Dr. Carroll and Brammer had numerous concerns about Akshay. Neither recommended that he have custody of the child. The circuit court accepted Dr. Carroll's testimony that due to Akshay's personality disorder, he "sees the world through colored glasses and has been unable to see the changes he needs to make in order to achieve reunification with the [c]hild." Dr. Carroll

and Brammer recommended that Akshay participate in individual counseling, anger management classes, and parenting classes. Akshay admittedly did not complete the anger management classes and participated in only a few counseling sessions. Akshay never demonstrated that he could provide for the child and care for her in a safe, healthy manner.

"'[T]here is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)); see also Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 331 (2016). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

The circuit court adopted the guardian *ad litem*'s recommendations, including that "it would be detrimental if the [c]hild were placed back in [Akshay's] care." Based on the evidence presented, the circuit court found that the child had "grown, done well, and made progress over the 19 months she has been in foster care; unfortunately, [Akshay] ha[d] not." Contrary to Akshay's arguments, the circuit court did not err in finding that termination of his parental rights under Code § 16.1-283(C)(2) was in the child's best interests.

With respect to Akshay's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a

preponderance-of-the-evidence standard governs judicial modifications of foster care plans."[7]

Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[7] In the argument section of his brief, Akshay argues that "the tardy filing of the foster care plan that changed the permanent goal to 'Adoption' by [the Department] was contrary to [the child's] best interests." He further asserts that the Department's application of a "'reasonable period of time not to exceed 12 months from the date the child was placed in foster care' is arbitrary, as evidenced in its own application of the 'target date' of August 31, 2019 in the foster care service plan filed on February 28, 2019 . . . ." We find that Akshay waived these arguments because he did not include them as assignments of error. See Fox v. Fox, 61 Va. App. 185, 202 (2012) ("Rule 5A:20(c) requires us to hold that this issue is waived because it is not part of appellant's assignment of error.").