COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Malveaux and Senior Judge Frank

UNPUBLISHED

RACHEL EMILY JENKINS

                                              MEMORANDUM OPINION*

v.      Record No. 0789-20-3                      PER CURIAM
                                           DECEMBER 29, 2020

TAZEWELL COUNTY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Jack S. Hurley, Jr., Judge

(Amanda Shea Hale, on brief), for appellant.  Appellant submitting
on brief.

(Penny E. Nimmo; Gabrielle de Courcy, Guardian *ad litem* for the
minor children; Broadwell, Gillespie & Nimmo, P.C.; The de Courcy
Law Firm, on brief), for appellee.  Appellee and Guardian *ad litem*
submitting on brief.

Rachel Emily Jenkins (mother) appeals the orders terminating her parental rights to her

children.  Mother argues that the circuit court erred by terminating her parental rights under Code

§ 16.1-283(B) and (C) because she was not responsible for the actions ultimately leading to the

emergency removal of the children and the evidence was sufficient to prove that the conditions

which resulted in the abuse or neglect could be substantially corrected or eliminated so the children

could be returned home safely.  Upon reviewing the record and briefs of the parties, we conclude

that the circuit court did not err.  Accordingly, we affirm the decision of the circuit court.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to the four children who are the subject of this appeal, A.S., E.S., C.M.S., and C.L.S. Mother and the children's father, Josh Skipworth (father), had "an extremely volatile relationship" and a history of domestic violence.[2] In 2018, the Tazewell County Department of Social Services (the Department) received reports alleging drug abuse and domestic violence in the home while the children were present. Mother had tested positive for drugs, was evicted from her apartment, and was charged with multiple felonies. The Department had developed safety plans and agreed to the maternal grandmother supervising mother, so that mother was not left unsupervised with the children. Then, for approximately one month, the Department lost contact with mother and did not know where she or the children were.

On July 19, 2018, the maternal grandmother and the four children were riding in a car operated by the maternal grandmother's husband. He was driving while intoxicated and assaulted the maternal grandmother, causing her to have a "a busted lip and bruises" on her face. He left the maternal grandmother and the four children, who ranged in age from four months to

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father signed an entrustment agreement, and the Tazewell County Juvenile and Domestic Relations District Court terminated father's parental rights.

four years old, on the side of Highway 460. The police arrested the maternal grandmother's husband for felony child neglect, driving under the influence with minors in the vehicle, and domestic assault. Despite this incident, mother continued to leave the children in the care of the maternal grandmother. The Department spoke with the maternal grandmother, who indicated that she intended to reconcile with her husband if he agreed to counseling after his release from incarceration. The Department determined that it was best to remove the children and attempted a relative placement with the paternal grandmother, but the children were more than the paternal grandmother could handle. On July 27, 2018, the Department placed the children in foster care.

The Tazewell County Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and preliminary removal order. The JDR court subsequently adjudicated that the children were abused or neglected and entered a disposition order.

While the children were in foster care, mother alternated residing with the maternal grandmother in Virginia and with father in West Virginia, which impacted the Department's ability to provide her with services. The Department required mother to participate in parenting classes, in-home services, and random drug screens. Mother completed the parenting classes, but she did not demonstrate what she had learned. Mother also needed to obtain and maintain stable housing and employment, which she did not do.

In addition, the Department required mother to abstain from drug use and criminal activities, but she continued to abuse drugs and get arrested for criminal activity. On August 23, 2018, mother tested positive for THC, buprenorphine, and cocaine, and she admitted to daily consumption of vodka. Mother was referred to a facility where she could "try to get detoxed," but she refused to go. Mother also was referred to Alcoholics Anonymous (A.A.) and Celebrate Recovery, and although she reported going to A.A. meetings, she did not provide proof of

attendance. In September 2018, mother tested positive for marijuana twice and reportedly had been in a domestic violence incident with father. She was referred for domestic violence support and encouraged again to seek substance abuse treatment, but mother did not follow through with the referrals. On October 2, 2018, mother was at the Department for a supervised visit and was arrested for a probation violation. On November 19, 2018, mother tested positive for methamphetamines, amphetamines, and marijuana and was visibly under the influence at a scheduled supervised visitation. Again, mother was advised to go to substance abuse treatment, but she refused. Mother and father also continued to engage in domestic violence, and mother refused to seek domestic violence services. On November 22, 2018, mother was arrested in West Virginia for possession with intent to distribute a Schedule II drug; she possessed sixty grams of marijuana.[3] In December 2018, mother tested positive for THC. Mother was incarcerated from January 2019 until March 2019, when she started probation.[4]

The Department arranged for weekly supervised visitation between the children and mother. The children's behavior deteriorated after they visited with mother. For example, A.S. and E.S. would throw tantrums, have nightmares, and wet their bed after visits with mother. Mother last visited with the children on May 15, 2019, before she was incarcerated again.

In May 2019, mother and father informed the Department of their intention to reconcile and co-parent the children. The Department required them to participate in couple's counseling.

---

[3] At the time of the circuit court hearing, mother's West Virginia criminal charges were still pending.

[4] In October 2019, the circuit court found that mother had violated her probation after she was arrested for possessing marijuana and scales and sentenced her to four months' incarceration.

The Department reminded mother that she needed to obtain employment and abstain from drug use and criminal activity. This was the last time that mother spoke with the Department.[5]

Thereafter, the Department pursued termination because mother had not demonstrated stability or compliance. On June 19, 2019, the JDR court approved the foster care goal of adoption. On December 5, 2019, the JDR court terminated mother's parental rights to the children. On December 12, 2019, mother appealed the JDR court's permanency planning and termination orders to the circuit court.

On May 14, 2020, the parties appeared before the circuit court. The circuit court dismissed mother's appeal of the permanency planning orders, as they were not timely appealed.

The Department presented evidence that the children were doing well in foster care. The children had been living with the same foster family since they entered foster care. When the children first entered foster care, A.S. claimed that she had been sexually abused, and A.S. and E.S. had night terrors and would wet their beds or clothes after visiting mother. Consequently, A.S. and E.S. attended individual counseling. Counseling and the cessation of mother's visits helped A.S. and E.S. because by the time of the circuit court hearing, A.S. and E.S. were no longer having night terrors or bathroom accidents. The younger two children did not have any behavioral issues. The children and their foster family had bonded, and the foster parents wanted to adopt them.

The Department presented evidence that mother did not have a viable plan to care for the children, and she had not complied with the Department's requirements for reunification. Mother was unemployed and did not have stable housing. When asked about how she would support her children, mother testified that she had tried unsuccessfully to find a job but admitted

---

[5] Mother left a voicemail for the social worker in October 2019 after she was released from incarceration, but the social worker was unable to reach her and talk with her.

that her criminal record "doesn't look very good" to employers.  She also expressed a desire to "get a home," but at the time of the circuit court hearing, she was living with the maternal grandmother and her husband, who left the maternal grandmother and the children on the side of the road which led to the children's placement in foster care.  Furthermore, mother continued to have contact with father daily but denied any domestic violence between them for the past "six or seven months."

Mother admitted that she had tested positive for drugs while the children were in foster care and that she had not completed substance abuse treatment but claimed to have attended A.A. meetings.  Mother's probation officer testified that she had not followed through with substance abuse treatment, and she was the subject of a police investigation for allegedly distributing "massive amounts of marijuana."[6]  Her probation officer stated that although he had not had problems with mother, she had had "a hard time getting structured enough to do the things she need[ed] to do all of the time."  Mother admitted that she had "messed up" but loved her children and did not agree to the termination of her parental rights.

After hearing the evidence and arguments, the circuit court considered the totality of the evidence, including mother's drug use, unemployment, and instability.  The circuit court held that it was in the children's best interests to terminate mother's parental rights.  On June 8, 2020, the circuit court entered orders terminating mother's parental rights under Code § 16.1-283(B), (C)(1), and (C)(2).  This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

---

[6] Mother denied distributing marijuana but admitted to posting a video on social media of herself possessing marijuana.

interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in terminating her parental rights because she was not responsible for the actions leading to the children's removal. The children had been in the care of the maternal grandmother when her husband drove them while intoxicated and left them on the side of the road. Mother acknowledges that she was aware of the incident and "allowed" the children to remain with the maternal grandmother "per the safety plan not of her own decision." Mother asserts that the Department's safety plan prevented her from "performing as a mother." Mother, however, fails to recognize that the Department never placed the children with the maternal grandmother. Rather, the Department had developed a safety plan in which the maternal grandmother supervised mother and the children because of mother's drug use, the domestic violence in the home, mother's eviction, and her pending criminal charges. Mother's actions led to the removal of the children because she required supervised visitation and could not care for the children herself.

Similarly, in Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317 (2016), this Court rejected Eaton's argument that she was not responsible for the actions leading to the removal of the child when the child was in the custody of others. Id. at 325. We found that Eaton had ignored the fact that the child was in the custody of others because a Tennessee court had found that she could not take care of the child. Id. At the time of the termination hearing, Eaton still was not in a position to care for the child. Id. at 325-26.

Here, the circuit court found that the evidence was sufficient to terminate mother's parental rights under Code § 16.1-283(B), (C)(1), and (C)(2). Mother argues that the conditions that resulted in the abuse or neglect could have been substantially corrected to allow the children to return home. Mother asserts that she "was working toward rehabilitating her environment and exercising more disciplined behavior" than she had in the past. She emphasizes that she was doing well on probation, maintaining sobriety, attending A.A. meetings, working on her GED, and trying to find a job.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Furthermore, the following is *prima facie* evidence for Code § 16.1-283(B)(2):

> a. The parent or parents have a mental or emotional illness or intellectual disability of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development;

> b. The parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning; or

> c. The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or

- 8 -

other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child.

Id.

After hearing the evidence and argument, the circuit court found that the Department had presented clear and convincing evidence for the second and third *prima facie* factors. The circuit court found that mother had "a major drug problem" and that "no treatment was ever followed through on, ever, and in addition to [the Department] recommending it, begging for it, referring [mother] to it and nothing ever happened." Although the circuit court recognized mother's attendance at "some A.A. meetings," it also found that A.A. was "a support group" and mother never attended substance abuse treatment.[7] Mother also did not participate in other required services, other than a six-week parenting class that took her six months to complete. Furthermore, the circuit court found that mother may have completed the parenting class, but she did not apply what she had learned.

At the time of the circuit court hearing, the children had been in foster care for almost twenty-two months. Mother had not completed the Department's requirements and was not in a position to care for the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the evidence, the circuit court did not err in finding that it

---

[7] The circuit court also recalled that it had ordered mother to participate in substance abuse treatment when she had appeared previously before the court on a criminal matter, so she had "defied the [c]ourt's order" by not completing substance abuse treatment.

- 9 -

was in the children's best interests to terminate mother's parental rights and that the evidence was sufficient to support termination under Code § 16.1-283(B).[8]

The Department requested an award of attorney's fees and costs incurred on appeal. This Court may award appellate attorney's fees "[i]n any case where attorney fees are recoverable under Title 16.1 or Title 20 relating to . . . the control or disposition of a juvenile and other domestic relations cases arising under Title 16.1 or Title 20, or involving adoption under Chapter 12 (§ 63.2-1200 et seq.) of Title 63.2 . . . ." Rule 5A:30(b)(1). Code § 16.1-278.19 allows a court to award attorney's fees and costs "on behalf of any party as the court deems appropriate based on the relative financial ability of the parties and any other relevant factors to attain equity." Here, the circuit court found that mother was indigent and appointed counsel for her. Therefore, we deny the Department's request.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[8] The circuit court also terminated mother's parental rights under Code § 16.1-283(C)(1) and (C)(2). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B), we, therefore, do not need to reach the question of whether mother's parental rights also should have been terminated under Code § 16.1-283(C)(1) and (C)(2).