COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, O'Brien and AtLee

ELAINE RENEE SHAMPINE, A/K/A
 ELAINE RENEA SHAMPINE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1448-22-3                      JUDGE MARY GRACE O'BRIEN
                                                    AUGUST 29, 2023

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                         Onzlee Ware, Judge

            (David A. Bowers, on brief), for appellant.  Appellant submitting on
            brief.

            (Timothy R. Spencer, City Attorney; Jennifer L. Crook, Assistant
            City Attorney; L. Brad Braford, Guardian ad litem for the minor
            child; L. Brad Braford, P.C., on brief), for appellee.[1]  Appellee
            submitting on brief.


        Elaine Renee Shampine, a/k/a Elaine Renea Shampine (mother) appeals a circuit court order

terminating her parental rights.[2]  Mother argues that the court erred in finding the evidence

sufficient to terminate her parental rights under Code § 16.1-283(B) and (C)(2).[3]  She claims the

evidence failed to show that her drug use endangered her child or that the Roanoke City Department

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Pursuant to Rule 5A:19(d), the guardian ad litem filed a notice joining appellee's brief.

[2] Mother did not appeal to the circuit court the Roanoke City Juvenile and Domestic
Relations District Court's (JDR court) order approving the permanency planning goal of
adoption.

[3] Although mother also challenges termination under Code § 16.1-283(E), the circuit
court made no such finding.

of Social Services (the Department) provided adequate services, and she argues the court failed to consider the child's best interests. We find no error and affirm.

BACKGROUND[4]

Mother is the biological parent of a child born substance-exposed to opiates, including heroin, on July 20, 2021. The child also had respiratory issues. The Department received a report of the child's condition and interviewed mother. The Department was already familiar with mother, having removed an older child from her home four years earlier due to substance abuse.[5]

During the interview, mother admitted that she had used heroin throughout her pregnancy, and her great-grandmother, with whom she lived, was unaware of the drug use. Mother also advised that she was bipolar but had stopped taking her prescription medication. A social worker visited the neonatal intensive care unit and learned that the child was "experiencing possible withdrawal symptoms" such as jitteriness, increased crying, and poor muscle tone.

On July 22, 2021, the JDR court granted the Department's petition for a preliminary child protective order based on abuse and neglect. The order stated that upon release from the hospital, the child would be placed with the maternal great-grandmother, and it allowed mother only supervised contact, even though mother lived at the same residence.

Following the child's release, a social worker conducted a home visit, during which mother admitted that she had used fentanyl three days earlier. Mother tested positive for fentanyl and buprenorphine in a urine screen, and a hair follicle test confirmed these results. The Department

---

[4] The record in this case is sealed. Nevertheless, this appeal necessitates unsealing limited portions of the record, including factual findings, to resolve the issues mother has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[5] The older child's father ultimately obtained sole legal and physical custody of that child.

contacted mother's behavioral health therapist, who advised that mother "was in need of a higher level of care such as detox/inpatient due to her continued usage of Fentanyl." During a visit with the social worker a few days later, mother stated that she had "used Fentanyl a couple of days ago." The Department discussed with mother her therapist's recommendation for inpatient treatment, and mother informed the Department that she had suffered from addiction for several years and could not "stay clean."

On September 3, 2021, the Department received a report that mother was using drugs in the home while the great-grandmother was asleep. Mother informed the Department's on-call team that she had been unsuccessful in finding a bed in an inpatient treatment facility. Mother admitted that she had used drugs the previous night while caring for the child but had "Narcan in the home if needed." Her admission prompted the Department "to request she leave the home due to the safety concerns of her being impaired" while caring for the child. Mother signed a safety plan that prohibited her from staying overnight with the child, and the Department reiterated that all visitations must be supervised. The great-grandmother informed the Department that she was unable "to care for the child long[-]term without assistance from the mother or other family members[,] which she does not have on a regular basis."

The Department found that although the great-grandmother was to supervise mother's interactions with the child, mother "continued to use substances during her time caring for [the child]." The Department petitioned for emergency removal of the child. In September 2021, the JDR court entered emergency and preliminary removal orders and placed the child in the Department's custody. The JDR court also entered an adjudicatory order finding abuse and neglect.

The Department offered mother various services during its involvement in the child's case, including a "[d]etoxification program and . . . the appropriate inpatient treatment which [wa]s required for her to be successful." The Department also offered mental health support services,

medication management, and resources in locating employment and suitable housing. The Department required random drug screenings to ensure that mother maintained sobriety.

When mother "made no progress" and "ha[d] not sought outpatient or inpatient treatment for her substance abuse issues," the Department requested that the JDR court approve changing the permanency planning goal from return home to adoption. The JDR court entered a dispositional order approving the adoption plan, which mother did not appeal. Then, the Department petitioned for an order terminating mother's parental rights, which the JDR court entered on May 25, 2022. Mother appealed the termination order to the circuit court for de novo review.

At that hearing, the child's foster care worker testified that the Department had been providing mother services since the removal of her older child approximately four years earlier but "substance abuse still remain[ed] an issue." Further, mother had never demonstrated a protracted period of sobriety during the current case. Mother acknowledged having a substance abuse problem since age 12 and stated that she had used fentanyl and heroin two weeks before the circuit court hearing. She admitted that she was not engaging in any services at the time of the hearing.

The Department's evidence established that the child, who was approximately 13 months old at the time of the circuit court hearing, was thriving in foster care and beginning to meet developmental milestones. He visited a pediatrician regularly and, aside from allergy-related congestion and teething complications, had no significant medical concerns.

After hearing the evidence and arguments, the court found that termination of mother's parental rights was in the child's best interests. The court cited mother's long history of substance abuse and noted the child was born exposed to drugs. The court entered an order terminating mother's residual parental rights under Code § 16.1-283(B) and (C)(2). The court held that because mother did not appeal the JDR court's order approving the goal of adoption, that order remained in effect. Mother appeals.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). Where the circuit court heard the evidence "*ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Mother contends the evidence was insufficient to support terminating her parental rights. Specifically, she argues the Department failed to show that the child was harmed by her drug use. Furthermore, despite acknowledging the "long list" of services the Department offered, mother contends the Department did not provide "adequate timely []or immediate means" to assist in her addiction recovery. Finally, mother asserts the court failed to consider that she cooperated with the Department's drug testing, "acknowledged her regret and remorse for the mistake, and pleaded for understanding."

The court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(B) states that a parent's parental rights may be terminated if, based on clear and convincing evidence, it is in the best interests of the child and:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical,

mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Proof that the parent has "habitually abused . . . drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning" is prima facie evidence of the conditions in subsection (B)(2). Code § 16.1-283(B)(2)(b).

"Code § 16.1-283(B) 'speaks prospectively,' as to the parent or parents' ability to remedy the conditions that led to a child's placement in foster care." *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 369 (2012) (quoting *Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 425 (2012) (quoting *Winfield v. Urquhart*, 25 Va. App. 688, 695-96 (1997)); *see also Geouge v. Traylor*, 68 Va. App. 343, 375 (2017).

Here, the court determined that mother's drug use constituted neglect or abuse and was a serious threat to the child, that she could not substantially remedy this condition within a reasonable time, and that termination of her parental rights was in the child's best interests. *See* Code § 16.1-283(B). The record supports these findings. The Department removed the child from mother's care after the child was born substance-exposed and mother continued to use drugs, including fentanyl and heroin, while sharing a residence with and caring for the child. These circumstances refute mother's contention that "[t]here was scant or no evidence that her child had in any way been harmed" and support the court's finding that mother's drug abuse presented a "serious and substantial threat" to the child. Code § 16.1-283(B)(1).

- 6 -

Mother maintains that the Department did "not provide any adequate timely []or immediate means to assist [her] in her addiction recovery and the reunification of the child." Specifically, mother argues the Department failed to offer any services from the date of the child's removal until the Department filed its petition for termination. This argument fails, however, because "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." *Eaton v. Washington Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 327-28 (2016) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 268 (2005)). Nevertheless, the evidence proved that the Department provided many services to mother over the years, but she did not avail herself of those services.

The evidence demonstrated that mother had a long history of drug abuse and needed detoxification and inpatient treatment. The court determined that it was "not reasonably likely" mother could correct the conditions that led to the child's removal within a reasonable time. Code § 16.1-283(B)(2). Despite having nearly a year to do so, and four years since her older child was removed because of mother's drug abuse, mother had not corrected any of the conditions for the child to return safely to her care. *See id.*; *see also D. Farrell*, 59 Va. App. at 370 ("[W]e cannot ignore the legislature's recognition of the dangers that drug addiction poses to children, as expressed in this statute."). Mother did not complete a substance abuse treatment program, either inpatient or outpatient, was not engaged in services at the time of the court's hearing, and did not have a reliable source of income. She conceded that her substance abuse issues dated back to age 12 and that she could not "stay clean." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013)

(alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

The evidence was clearly sufficient for the court to terminate mother's parental rights under Code § 16.1-283(B). "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and therefore not addressing termination pursuant to another subsection). We find that the court did not err in terminating mother's parental rights under Code § 16.1-283(B); therefore, we do not reach the question of whether mother's parental rights also should have been terminated under Code § 16.1-283(C)(2).

## CONCLUSION

We find the evidence sufficient to prove that termination of mother's parental rights was in the child's best interests under Code § 16.1-283(B) and therefore affirm the circuit court's order.

*Affirmed.*