UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Raphael and Senior Judge Clements

JAMAICA-AUTUMN M. MILLER

MEMORANDUM OPINION*

v.      Record No. 1896-22-2                                    PER CURIAM
                                                              SEPTEMBER 19, 2023

HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
Carson E. Saunders, Jr., Judge

(Brad P. Butterworth, on brief), for appellant. Appellant submitting
on brief.

(Sherry L. Gill; Anne L. Roddy; Amanda D. Wood, Guardian ad
litem for the minor child; Sherry L. Gill, Esq., PLLC; Barnes &
Diehl, P.C.; The Law Office of Amanda D. Wood, on brief), for
appellee.


Jamaica-Autumn M. Miller (mother) appeals the circuit court's order terminating her

parental rights to her daughter, I.M.R.M. Mother argues that the evidence was insufficient to

terminate her parental rights under Code § 16.1-283(C)(1) and (E)(i). After examining the briefs

and record, the panel unanimously finds that oral argument is unnecessary because "the appeal is

wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the circuit court's

judgment.

_____
* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Mother has eight children, six of whom are older than daughter and one of whom is younger.[2] When daughter was born in July 2020, mother did not have custody of any of daughter's older siblings. Twenty months earlier, in November 2018, the Circuit Court of Sussex County had terminated mother's parental rights to one of the older siblings after that sibling tested positive at birth for cocaine and marijuana.

Daughter also tested positive at birth for marijuana. Considering mother's substance abuse and history with child-protective services, the Hopewell Department of Social Services removed daughter from mother's care. The Department initially placed daughter with the adoptive mother of her older brother. The circuit court approved the Department's goal of relative placement or adoption. The court found that goal appropriate because mother did not have custody of her six other children; another court had found mother "unfit" three months earlier; the Department's services were "unsuccessful in restoring mother"; and mother's parental rights to one of the older siblings had been terminated involuntarily.

Once paternity was established, the Department investigated father as a possible placement.[3] Father also suggested his sister and her husband—daughter's aunt and uncle—as a possible relative

---

[1] On appeal from an order terminating parental rights, we are required to view the evidence in the light most favorable to the party that prevailed in the circuit court, *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014), here, the Hopewell Department of Social Services.

[2] The record in this case was sealed. We unseal only the specific facts stated in this opinion, "finding them relevant to our decision." *Daily Press, LLC v. Commonwealth*, ___ Va. ___, ___ n.1 (Oct. 20, 2022). "The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[3] Paternity for daughter was established in November 2020. Daughter's biological father later voluntarily terminated his parental rights.

placement.  After the Department determined that father's home was not a "stable placement," the Department placed daughter with her aunt and uncle.

Mother gave birth to her youngest child in August 2021.  In 2021 and 2022, Child Protective Services from the City of Petersburg conducted a family assessment of mother and her youngest child because of allegations of inadequate supervision.  CPS transferred the matter to its "in-home services unit," which worked with mother for four to six months.  A social worker visited mother "at least once a month" and recommended that she complete parenting classes, which she did.  CPS closed its investigation in June 2022, with mother retaining custody of her youngest child.

While daughter was in foster care, the Department offered visitation to mother.  Mother initially visited weekly with daughter, but mother's visits became less frequent due to her unresponsiveness and unavailability.  Mother stopped visiting the child in October 2021 and did not request any additional visits.  The Department tried to schedule additional visits by calling mother, sending her text messages, and mailing her a letter.  Mother, however, was unresponsive or unavailable.  Mother told the Department on several occasions that she had been near someone with COVID-19 and could not visit.  One time, she said she could not visit because her youngest child had a fever.  Another time, she said she could not visit because she had been in a car accident.

The Department petitioned to terminate mother's parental rights to daughter in November 2021.  The juvenile and domestic relations district court granted the Department's petition on March 7, 2022.  After the JDR court terminated mother's parental rights, the Department stopped trying to arrange visitation.  Mother appealed the JDR court's ruling to the circuit court.

At a circuit-court hearing on November 21, 2022, the Department presented evidence about daughter's well-being.  Daughter had certain "health concerns," including skin and food allergies and digestive issues.  But daughter was "very well involved in activities" and "thriving" in foster

- 3 -

care.  Daughter continued to live with her paternal aunt and uncle, who had filed for custody and petitioned to adopt the child.[4]

Mother emphasized at the hearing that she "did everything" that the Department asked of her.  Mother testified that she took two drug tests after daughter entered foster care; both were negative.  Although mother had previously struggled with housing instability, she lived with her brother and her youngest child in November 2022.  She had shown the Department her house to demonstrate that she could care for daughter.  When the Department asked her to take an anger-management class, mother produced a completion certificate for a course from October 2019, before daughter was born.  And mother was periodically employed while daughter was in foster care.  Mother claimed at the hearing that her work schedule frequently prevented her from visiting daughter.  She explained that while she was employed, the only weekday that she could visit was Tuesday, but she often needed to take her youngest child to doctors' appointments on Tuesdays, forcing her to miss visits with daughter.

Although the Department's witness admitted at the hearing that mother had no tasks remaining to complete, the Department had not asked mother to complete certain tasks, such as drug screens, because the foster-care goal was relative placement or adoption, not returning home. Mother was unemployed at the time of the hearing and relied on her family, friends, and food stamps to support herself and her youngest child.  Mother did not present a plan to the Department to demonstrate that she could care for daughter.

After hearing the evidence and the parties' arguments, the circuit court determined that it was in the best interests of the child to terminate mother's parental rights.  The circuit court found that "[a]lmost half of this child's life has passed and this mother has not visited with this child at

---

[4] Daughter's initial foster mother had also petitioned for custody.  At the time of the circuit-court hearing, custody had not been decided.

all." The court discounted mother's excuses for why she had not visited daughter. The court could not "find any reason at all, except [mother's] lack of interest," to explain why she had not visited daughter for "over a year." The court also found that mother had "shown no plan or made no efforts to provide for this child." The court terminated mother's parental rights under Code § 16.1-283(C)(1) and (E)(i). Mother appeals.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

The circuit court acted under Code § 16.1-283(E)(i), which permits terminating parental rights "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated." Mother concedes that her parental rights to one of daughter's siblings had been involuntarily terminated. She argues, however, that the circuit court erred in finding that the termination of her parental rights to daughter was in daughter's best interests.

"'[T]here is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 48 (2014) (quoting *Peple*

*v. Peple*, 5 Va. App. 414, 422 (1988)). "Instead, '[t]he question must be resolved . . . in light of the facts of each case.'" *Eaton v. Washington Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 331 (2016) (alterations in original) (quoting *Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230 (1982)).

Mother emphasizes that CPS conducted a family assessment and closed the case after working with mother for several months. Mother argues that by complying with CPS and demonstrating that she could care for her youngest child, she showed that she could parent daughter as well. Mother stresses that she passed her drug tests and that there was no evidence of her abusing drugs. Mother notes that after the JDR court terminated mother's parental rights in March 2022, the Department stopped trying to arrange visitation. She asserts that the Department thereby prevented her "from engaging in any rehabilitative efforts that would have put her in a better position to stave off the termination."

The record, however, supports the circuit court's finding that mother's "lack of interest" in daughter caused the lack of visitation. Mother stopped visiting the child in October 2021 and did not request any additional visits. And although the Department tried to schedule additional visits by calling mother, sending her text messages, and mailing her a letter, mother was unresponsive or unavailable. At the time of the circuit-court hearing, daughter was 28-months old and had been in foster care her entire life. Mother had not seen the child for 13 months, which the court emphasized was "[a]lmost half of this child's life."

The circuit court's best-interests-of-the-child finding was also buttressed by other evidence. "[O]ne permissible measure of a parent's future potential is undoubtedly revealed in the parent's past behavior" with her children. *Eaton*, 66 Va. App. at 332 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 268 (2005)). Here, daughter and one of daughter's older siblings had tested positive for illegal drugs at birth. Mother had a history of

housing instability.  And the court heard evidence that mother was unemployed, that she relied on others to support her and her youngest child, and that she had not presented to the Department a plan showing that she could care for daughter.  In the meantime, daughter was "thriving" in foster care.[5]

CONCLUSION

Given the evidence supporting the circuit court's finding that it was in daughter's best interests to terminate mother's parental rights, we cannot conclude that the circuit court's judgment was "plainly wrong or without evidence to support it."  *Simms*, 74 Va. App. at 470 (quoting *Ridgeway*, 59 Va. App. at 190).

*Affirmed*.

---

[5] "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under Code § 16.1-283(E)(i) and declining to address termination under another subsection).  Given our conclusion that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(E)(i), we need not consider whether mother's parental rights were also properly terminated under Code § 16.1-283(C)(1).